**DIXIE FUEL COMPANY, Plaintiff,**

v.

**John CALLAHAN, et al, Defendants.**

**No. Civ.A. 97–373.**

United States District Court,
E.D. Kentucky.

Feb. 26, 2001.

H. Kent Hendrickson, Rice & Hendrickson, Harlan, KY, for Dixie Fuel Company, plaintiff.

David E. Middleton, Jane E. Graham, David Y. Olinger, Jr., U.S. Attorney's Office, EDKY, Lexington, KY, for Social Security Administration, John Callahan, Acting Commission, defendant.

David E. Middleton, Jane E. Graham, David Y. Olinger, Jr., (See above), for Darrell Blevins, Social Security Freedom of Information Act Officer, defendant.

## OPINION AND ORDER

FORESTER, Chief Judge.

This matter is before the Court upon the motion of plaintiff for attorney's fees pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E). The facts of this case are adequately documented in the record, therefore they need not be reiterated here. Having been fully briefed, this matter is ripe for review.

## I. ANALYSIS

### A. FOIA Attorney's Fees Framework

█ "The Congressional policy behind the FOIA is to encourage public access to government information and to enable individual citizens to pursue their statutory rights by eliminating administrative barriers that could only be hurdled through expensive litigation." *Seegull Mfg. Co. v. N.L.R.B.*, 741 F.2d 882, 886 n. 1 (6th Cir. 1984) (citations omitted). If a complainant is forced to endure costly litigation, then, based upon this policy, the Court "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). An award of attorney's fees is not a reward for successful claimants or a penalty against the government; it is merely designed to "relieve plaintiffs with legitimate claims of the burden of legal costs." *Falcone v. IRS*, 714 F.2d 646, 647 (6th Cir.1983). The FOIA does not exclude corporations or the wealthy from obtaining fees "where such would be otherwise proper." *Seegull Mfg. Co.*, 741 F.2d at 886.

█ In determining whether to grant attorney fees under the FOIA, courts apply a two-part test. *GMRI, Inc. v. E.E.O.C.*, 149 F.3d 449, 451 (6th Cir.1998). First, this Court must "decide whether the plaintiff 'substantially prevailed' and is thus eligible for such an award. If so, [then the Court must] determine whether the plaintiff is entitled to such an award based upon a balancing of equitable considerations." *Id.*

### 1. Substantially Prevailed

█ A plaintiff need not win a law suit or receive a court order compelling the government to produce the requested

documents. Instead, a plaintiff "will have substantially prevailed if it demonstrates that the prosecution of the lawsuit was reasonably necessary to obtain requested information, and that the existence of the lawsuit had a causative effect upon the release of that information." *Id.* at 451–52.

The government contends, without citing *any* authority, that plaintiff did not "substantially prevail." First, the government argues that the Last Employer File ("LEF") was not in use during the relevant time. The Court finds this argument unpersuasive. The government goes to great lengths explaining the role of the LEF in the Social Security Administration's ("SSA") assignment of responsibility for particular miners. In so doing, they demonstrate that, while the LEF may not have been used for the particular assignments in question, it no doubt was used in compiling the data from which the assignments to plaintiff were made. The LEF is, in essence, a building block from which the SSA makes assignments. Just as this Court often chooses to cite a recent extrapolation of an "old chestnut" from which the common law has grown, so too can the SSA rely on new interpretations of its "related company" data in making its assignments. However, in so doing, neither this Court nor the SSA can claim to have ignored the foundation upon which its decision was based. Therefore, the Court finds that, while the SSA may not directly have used the LEF in making the assignments to the plaintiff, the SSA referenced information previously amassed from the LEF in making the assignments.

Second, the government asserts that plaintiff did not include the LEF in its FOIA request. Presumably, this argument is offered to buttress the claim that plaintiff did not "substantially prevail" in its FOIA claim. It is undisputed that plaintiff did not specifically request the LEF from the SSA by name. What is *relevant*, however, is whether the LEF "fell within the scope of plaintiff's request." *GMRI, Inc.*, 149 F.3d at 452. With regard to the LEF and other files and items specified in the complaint, this Court has already found that the plaintiff's eight requests for items related to or used in assigning the beneficiaries to the plaintiff met the specificity requirement set forth in 5 U.S.C. § 552(a)(3)(A). *Opinion & Order*, March 17, 1998, D.E. # 43 at 15. Based on the analysis above, the Court stands by this conclusion.

■ Next, the government argues that the LEF was not maintained in a system of records. "System of Records" is a legal term with particular legal significance in certain settings, yet the government offers no support, citation or explanation for its argument. The Court is left to assume that the government is making this argument pursuant to the Privacy Act, 5 U.S.C. § 552a. The Privacy Act is designed to protect the privacy of individuals who are identified in information systems maintained by federal agencies by preventing misuse of information. *See Thomas v. U.S. Dept. of Energy*, 719 F.2d 342 (10th Cir.1983). The SSA defines "individual" in its regulations as "a living person who a citizen of the United States or an alien lawfully admitted for permanent residence. It does not include persons such as sole proprietorships, partnerships, or corporations." 20 C.F.R. § 401.25. To the best of this Court's knowledge, the LEF does not include any information about individuals. Furthermore, plaintiff, as a non-individual, does not qualify for the protections or limitations of the Privacy Act. Because the government has not demonstrated how the Privacy Act generally, or a "System of Records" specifically, is relevant to plaintiff's FOIA request, the Court finds that this argument is irrelevant with regard to plaintiff's fee petition and disregards it as such.

■ Unfortunately, none of these arguments truly address the questions before the Court: (1) was this suit reasonably necessary to obtain the requested information; and (2) did the existence of the lawsuit have a causative effect upon the release of that information? In November of 1996, plaintiff filed several FOIA requests with the SSA relating to the assignment of beneficiaries. These requests included, among other items, information relating to SSA's determination that plaintiff is a "related person" as defined in the Coal Act as well as any policy statements or administrative staff manuals concerning the assignment of beneficiaries. In June of 1997, the SSA forwarded several manuals to plaintiff containing guidelines for assignments. These manuals explained that the SSA relied, at least in part, on the LEF when making assignments, yet the SSA did not provide the LEF in response to Plaintiff's requests. Plaintiff filed this action on July 30, 1997, to compel the SSA to release requested documents including the LEF.[1]

On August 12, 1997, the Court, in an effort to assist the parties in settling their differences, ordered the plaintiff to write a detailed letter to the SSA FOIA Office requesting specific FOIA information. The Court stated that, if after the request, plaintiff contends that the SSA still has not provided the information sought, plaintiff may seek review in this Court. At some point, and apparently in response to plaintiff's specific FOIA request, the SSA alleged that it did not have a copy of the LEF. In an Opinion and Order dated March 18, 1998, this Court ordered the defendant to submit evidence in the form of an affidavit attesting to the fact that defendant does not possess the "Last Employer File," if it is so able. [D.E. # 43].

On April 10, 1998, after a request for extension of time to respond, the SSA submitted a brief and an affidavit stating that it either did not have the LEF or it did not know whether it had it. Defendant also argued that the LEF was voluminous, contained the names of individuals, and was protected by the Privacy Act. The Agency went on to say that the LEF was not particularly useful to the SSA in making assignments. Notwithstanding these arguments and assertions, the SSA released the LEF to plaintiff on April 27, 1998.

Based upon these facts, the Court finds that the lawsuit was reasonably necessary to obtain the requested information. After six and one half months from the date of plaintiff's FOIA request, only two of the regional SSA offices partially responded. Based on the SSA's inaction, plaintiff was reasonable in assuming that its request had been denied. When plaintiff filed the suit, eight months after its initial FOIA request, it had no reasonable assurances that its FOIA requests would be filled.[2] Since plaintiff's request constructively had been denied, judicial review of the agency decision (or indecision) was reasonably necessary to obtain the requested information.

The Court also finds that the existence of the lawsuit had some causative effect

---

1. Ordinarily, plaintiff would have to exhaust all administrative remedies before bringing this cause of action; but in this situation, jurisdiction was proper. The SSA regulations state that when requests go unanswered for extended periods of time without explanation, the movant may treat the SSA's inaction as a final denial, which, in turn grants jurisdiction to a U.S. District Court. 20 C.F.R. 402.205.

2. Approximately two weeks before plaintiff filed suit, the SSA mailed plaintiff a letter describing an enormous work backlog in addition to extensive file relocation resulting in indefinite delay in obtaining the materials responsive to plaintiff's FOIA request. This delay was in addition to the nearly eight months plaintiff had already waited for its request.

upon the release of that information. Many of plaintiff's requests went completely unanswered until after plaintiff filed its complaint. Within weeks of the suit being filed, defendant released a significant amount of information in response to plaintiff's request. In addition, the SSA miraculously uncovered the LEF a little more than one month after this Court ordered defendant to submit evidence that it did not possess the LEF. The SSA requested additional time to provide this evidence because it needed to more closely investigate the LEF status, presumably something it had not done prior to the Court's order. For these reasons, the Court finds that the lawsuit did, to some extent, cause the defendant to release requested information.

Accordingly, the Court finds that plaintiff substantially prevailed in its FOIA litigation and is therefore eligible for an attorney's fees award.

### 2. Equitable Considerations

 Next the Court must balance several equitable considerations in deciding whether plaintiff is *entitled* to attorney's fees in this case. The factors this Court must consider include, but are not limited to: "[1] the benefit to the public deriving from the case; [2] the commercial benefit to the complainant and the nature of its interest in the records; and [3] whether the agency's withholding had a reasonable basis in law." *Detroit Free Press, Inc. v. D.O.J.*, 73 F.3d 93, 97 (6th Cir.1996) (*quoting American Commercial Barge Lines Co. v. N.L.R.B.*, 758 F.2d 1109, 1111 (6th Cir.1985)). The Court will evaluate each factor in turn.

The Court finds that this case provided a distinct benefit to the public. The public has a unique interest in the enforcement and vindication of the FOIA. Each time an agency disregards its obligation to diligently answer and provide information in response to FOIA requests, the public is harmed. In the same sense, the public interest is served when, as in the case at bar, a court refuses to condone the agency's behavior by ignoring its unreasonable conduct. *See Seegull Mfg. Co.*, 741 F.2d at 886, n. 1. This conclusion is consistent with the congressional policy behind the FOIA, to provide public access to information without expensive litigation, as discussed above. Furthermore, this case ensures the integrity of the Combined Fund which provides health care benefits to unassigned retired miners and their dependents pursuant to the Coal Act. Enabling companies to sort out their responsibility with respect to these unassigned beneficiaries is certainly of benefit to the public.

On the other hand, the Court finds that plaintiff, to some extent, stood to gain commercially from this FOIA request. In 1995 and 1996, the SSA assigned plaintiff more than sixty beneficiaries, resulting in a total premium liability for year end 1997 of nearly $500,000. Plaintiff believed that it was not the closest "related person" to these beneficiaries and thus, the assignment was improper. Certainly the potential for a $500,000 liability reduction constitutes a commercial interest in the information; however, plaintiff had no intention of profiting from its FOIA request. Instead, plaintiff hoped to substantiate its position that it was not liable for the assigned beneficiaries in the first place, thereby absolving plaintiff of any obligation to disburse unnecessarily its assets to improperly assigned beneficiaries. To be sure, money motivated the FOIA request, but plaintiff was forced into a uniquely defensive posture when it was incorrectly assigned beneficiaries for whom it was now responsible.[3] The

---

**3.** As a result of *Eastern Enterprises v. Apfel,* 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d

Court finds that the plaintiff did benefit commercially from its FOIA request, however, the Court finds that on balance this factor alone does not preclude an attorney's fees award.

Finally, this Court finds that the SSA's withholding had no reasonable basis in law. Save the assertion that the SSA either did not possess or could not find the LEF, it offered no legitimate legal basis for not complying with the FOIA request. As for the "lost document" pronouncement, the Court is unimpressed. According to the SSA's own manual:

> Portions of the LEF were used to make assignments, and are considered part of the basis for the assignments (if requested), and must be considered when deciding whether the assigned operator (or related company) has received all of the information pertaining to the basis for its assignments(s). If the request is for the entire LEF, then treat it as a FOIA request, and forward the request to FOIA [a/k/a the SSA FOIA Office of Disclosure Policy] for response. **Note: FOIA will deny the request.**

*Supplemental Coal Act Review Instructions # 3*, December 1994, at 4 (emphasis added).[4] These instructions indicate a blanket policy against disclosing the LEF under the FOIA. The nondisclosure policy casts a huge shadow over defendant's assertions that it did not possess or could not find the LEF. That shadow is darkened to the point of incredibility when the SSA suddenly discovers the LEF one month after this Court put its feet to the fire.

After balancing these equitable considerations, the Court finds that plaintiff is entitled to receive attorney's fees pursuant to the FOIA.

**B. Calculating the Attorney's Fees**

■ The Sixth Circuit recognizes that an award of attorneys' fees normally is based on the lodestar. *U.S. ex rel. Taxpayers Against Fraud v. General Elec. Co.*, 41 F.3d 1032, 1048 (6th Cir.1994). The lodestar is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In *U.S. ex rel. Taxpayers Against Fraud*, The panel explained that:

> [t]he uniform application of lodestar equations is preferred over an unpredictable system in which different trial judges devise their own subjective, spontaneous formulas. *See, e.g., Northcross v. Board of Educ.*, 611 F.2d 624, 636 (6th Cir.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 3000, 64 L.Ed.2d 862 (1980). However, the district judge may make modifications to account for unreasonable and excessive hours or when unique circumstances justify adjustments to hourly rates. *Id.* at 636–38.

41 F.3d at 1048. Other Circuits have applied the lodestar method to attorney's fees cases under the FOIA and this Court finds its general application appropriate in this case as well. *See, e.g. Weisberg v. U.S. Dept. of Justice*, 745 F.2d 1476 (D.C.Cir.1984).

**1. Hourly Rate**

■ Plaintiff's counsel, H. Kent Hendrickson, seeks an hourly rate of $125 for his services in this case. The government did not object to this rate, but the Court will still review it for reasonableness.

■ A reasonable rate is determined by reference to the marketplace. *Missouri v. Jenkins*, 491 U.S. 274, 285, 109

---

451 (1998), the SSA voided all of plaintiff's assignments.

4. *See* Plaintiff's Reply to Response to Fee Petition, Appendix 1 [D.E. # 99].

S.Ct. 2463, 105 L.Ed.2d 229 (1989). The Court is aware that hourly rates for litigators in the local market range from less than $100 to more than $250 per hour. The Sixth Circuit has recognized repeatedly that "the district court judge who presided over a case is in the best position to evaluate the reasonableness of fee requests, both in terms of the number of hours spent and a reasonable hourly rate of compensation." *Louisville Black Police Officers Organization, Inc., v. City of Louisville*, 700 F.2d 268, 274 (6th Cir. 1983); *see also, Blanchard v. Bergeron*, 489 U.S. 87, 96, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (discussing the importance of the district court judge, in his good judgment, assessing what is a reasonable fee under the circumstances of the case). During the course of this case and over the last three and one half years, the Court has had the opportunity to evaluate the skills and performance of plaintiff's counsel. Based upon the guidance of *Northcross* and its progeny, this Court concludes that $125 is a "reasonable" hourly rate for Mr. Hendrickson.

**2. Hours Expended**

 Plaintiff submitted a detailed, itemized fee petition. In his billing records, Mr. Hendrickson did not segregate FOIA work from "Coal Act" work; however, each itemized service includes FOIA work. Mr. Hendrickson estimated that one-half or fifty percent (50%) of all work listed in the fee petition was FOIA work. Furthermore, with exception of those services listed for April 13, 1998 through April 30, 1998, he estimated that two-fifths or forty percent (40%) of the FOIA work pertained to acquisition of the "Hot List." By agreement of the parties, plaintiff withdrew its demand for the "Hot List" and

plaintiff agreed that it would not be awarded an attorney fee for services directly related to its demand for the "Hot List." Accordingly, and with noted exceptions, the time expended by Mr. Hendrickson was reduced by one-half or fifty percent (50%) and reduced again by two-fifths or forty percent (40%). Based on these calculations, Mr. Hendrickson requests compensation for 75.6 hours.[5]

Once again, the government did not object or respond to this detailed calculation, but the Court will review it for reasonableness. The Court has carefully reviewed plaintiff's fee petition and its billed-hour reduction formula and is of the opinion that the time expended is reasonable and the hours recorded are not duplicative but were useful and were necessary to the successful outcome of this case. On the other hand, the Supreme Court has noted that consideration of the results obtained is "crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. According to the Court, two questions must be addressed in this situation. "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.* With this caveat in mind, the Court believes a reduction is appropriate for the time expended in pursuit of the "Hot List"; however, that reduction is reflected appropriately in plaintiff's billed-hour reduction formula. Therefore, the Court finds that 75.6 hours is a reasonable amount of time expended on the FOIA portion of this litigation.

---

**5.** Mr. Hendrickson first multiplied his hourly rate by the total number of hours worked and then reduced the resulting fee, where appropriate, by fifty percent (50%) and again by forty percent (40%). Of course, reducing the hours by these percentages prior to calculating the fee reaches the same result.

In sum, the Court finds that plaintiff is eligible and entitled to attorney's fees at a rate of $125 per hour for 75.6 expended hours, resulting in $9,450.

## II CONCLUSION

Accordingly, the Court, being otherwise fully and sufficiently advised, HEREBY ORDERS that:

(1) plaintiff's motion for attorney's fees [D.E. # 88] and amendment and supplement thereto [D.E. # 97, 98] are GRANTED and plaintiff is awarded attorneys fees in the total amount of $9,450; and

(2) this order is final and appealable and no just cause for delay exists.