**AUTOALLIANCE INTERNATIONAL INC., Plaintiff,**

v.

**UNITED STATES CUSTOMS SERVICE, Defendant.**

No. 02–72369.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 29, 2004.

Bruce J. Casino, Baker & Hostetler, Washington, DC, Paulsen K. Vandervert, Dearborn, MI, Mark C. Joye, Baker & Hostetler, Houston, TX, for Plaintiff.

Derri T. Thomas, United States Attorney's Office, Detroit, MI, for Defendant.

### MEMORANDUM AND ORDER ON ATTORNEYS' FEES AND COSTS

COHN, District Judge.

#### I. Introduction

This is a Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.*, case. Plaintiff AutoAlliance International, Inc. (AutoAlliance), formerly Mazda Motor Manufacturing (USA) Corporation, filed a two count complaint against the United States Customs Service (Customs) seeking the production of certain agency records as well as the return of a $2,239.36 audit fee. Count I pertained to Customs' withholding of the information under FOIA exemptions. Count II pertained to the assessment of the audit fee.

The Court granted AutoAlliance's motion for summary judgment on count II, finding that Customs improperly assessed the audit fee. *See* Memorandum and Order Granting Plaintiff's Motion for Summary Judgment on Count II of the First Amended Complaint filed July 31, 2003. Thereafter, following an *in camera* review of documents being withheld by Customs, the Court granted in part and denied in part Auto Alliance's motion for summary judgment on count I. *See* Order filed October 9, 2003.

Before the Court is AutoAlliance's motion for attorneys' fees and costs, requesting $167,040.00 in attorneys' fees and $8,376.21 in costs, for a request of $175,416.21. Customs objects. For the reasons that follow, the motion will be

granted in principle; the amount of attorneys' fees and costs must be computed.

## II. Background

### A.[1]

### A. Procedural History

On June 7, 2002 AutoAlliance filed a complaint seeking declaratory and injunctive relief related to its FOIA requests directed to the Washington D.C., Philadelphia, and Detroit Customs branches. On August 12, 2002, Customs filed a motions to dismiss under Fed. R.Civ.P. 12(b)(1) (lack of jurisdiction) and 12(b)(6) (failure to state a claim upon which relief can be granted) on the grounds that AutoAlliance did not exhaust its administrative remedies. On December 4, 2002, following a hearing on Customs' motion, the Court agreed that AutoAlliance did not exhaust its administrative remedies. However, the Court held the motion in abeyance and instructed AutoAlliance to exhaust the available administrative remedies.

On February 26, 2003, after AutoAlliance exhausted its administrative remedies, it filed an amended complaint for declaratory and injunctive relief. AutoAlliance's amended complaint states two counts. Count I concerns the failure to release the requested documents. Count II concerns the assessment of fees against AutoAlliance.

### B. The Audit and FOIA Requests

#### 1. Customs' Audit

Between approximately June 1994 through May 1996, Customs conducted a valuation audit of AutoAlliance to determine if AutoAlliance correctly declared the values of imported merchandise during a certain time period. The audit report concluded that AutoAlliance had correctly declared the values of the imports that were the subject of the audit.

In subsequent meetings between AutoAlliance and Customs to discuss the audit, however, Customs indicated that it had determined that certain development costs[1] that AutoAlliance paid to Mazda Corporation in Japan should be dutiable, but that Customs could not determine to which entries the development costs should be charged. A Detroit-based Customs auditor referred the development costs matter to Customs at the port of Philadelphia, which added the amount of the development costs to entries of safety fencing and netting of un-imported goods. AutoAlliance administratively protested the action, saying that the development costs were not related to the value or production of the goods in those entries. Customs denied the protest and AutoAlliance's subsequent request for reconsideration.

#### 2. AutoAlliance's FOIA Requests

As a result of the dispute over development costs, AutoAlliance made three FOIA requests on August 9, 2001. The FOIA requests sought copies of documents relating "to several entries, value/rate advances, liquidations, protests, applications for further review of protests, training of certain Customs agents and employees, and other events." Amended Comp. at ¶ 10. The FOIA requests were sent to (1) the Commissioner of Customs in Washington, D.C. (Washington request); (2) the Customs port director in Philadelphia (Philadelphia request); and (3) the Customs Regulatory Audit Division in Detroit (Detroit request). Because the fee was assessed only in connection with the Detroit request, only this request will be discussed.

---

**1.** The Background is taken from the July 31, 2003 Memorandum and Order.

### 3. The Detroit Request

The FOIA processor in Detroit who handled AutoAlliance's request responded to AutoAlliance's request in writing on August 29, 2001 that the Detroit office does not have all of the records responsive to the request and that the processor did not know which Customs office would have the relevant records. The letter also indicated that other records AutoAlliance requested are exempt from disclosure under FOIA. AutoAlliance renewed its Detroit request on October 10, 2001, and the same FOIA processor again responded that the office does not have all records AutoAlliance requested and that much of the requested information is exempt from disclosure. On November 12, 2001, AutoAlliance filed an administrative appeal of Customs' partial denial and partial lack of response to the Detroit request.

The Detroit office then produced some information, but informed AutoAlliance by letter in April 2002 that most of the information contained in the requested documents would be withheld under the deliberative process privilege of 5 U.S.C. § 552(b)(5).[2] The letter also requested payment of $5,000.00 to conduct a review of the documents.

On June 7, 2002, AutoAlliance filed a complaint with this Court seeking declaratory and injunctive relief. On December 4, 2002, after a hearing on Customs' motion to dismiss, the Court instructed AutoAlliance to pay the requested $5,000.00.

On December 6, 2002, AutoAlliance sent Customs a check for the appropriate amount. On January 23, 2003, Customs informed AutoAlliance that 212 pages of documents withheld in their entirety were properly withheld, 756 pages withheld in full could be released with redactions, and the remaining pages could be released in full.

On February 26, 2003 Customs returned to AutoAlliance the uncashed check for $5,000.00 and requested payment of $2,239.36, which was the actual of cost of processing the Detroit request. AutoAlliance sent a check for the new amount on February 26, 2003 but reserved the right to request reimbursement.

[1] Development costs are payments made by a manufacturing operation for its share of the costs of research, design, and development of the products the manufacturer makes, and they are dutiable provided they relate to the costs of development of imported goods.

[2] This section provides that information exempt from FOIA disclosure includes "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

### B.

As described above, the Court granted AutoAlliance's motion for summary judgment on count II and granted in part and denied in part its motion for summary judgment on count I.

### III. Analysis

#### A. Recovery of Attorneys' Fees and Costs

AutoAlliance may recover its attorneys' fees and costs under FOIA. 5 U.S.C. § 552(a)(4)(E) provides:

> The court may assess against the United State reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

Recovery of litigation costs under the FOIA fee-shifting provision is subject to a two-step inquiry. *GMRI, Inc. v. E.E.O.C.,*

149 F.3d 449, 451 (6th Cir.1998). The Court must determine both the plaintiff's eligibility for and entitlement to an award of fees and costs. *Tax Analysts v. United States Department of Justice,* 965 F.2d 1092, 1093 (D.C.Cir.1992).

### 1. Eligibility

■ As to eligibility, a plaintiff may be eligible to recover attorney fees and litigation costs reasonably incurred in any case where the complainant has "substantially prevailed" pursuant to FOIA § 552(a)(4)(E). A plaintiff need not win a lawsuit or obtain a court order compelling the government to produce the requested documents to recover fees and costs. *Dixie Fuel Co. v. Callahan,* 136 F.Supp.2d 659 (E.D.Ky.2001).

The Court of Appeals for the Sixth Circuit has held that a plaintiff will have "substantially prevailed" if he presents convincing evidence showing he is "eligible" for an award by: (1) proving that filing of the FOIA action was reasonably necessary to obtain the information sought; and (2) proving that the action had a substantial causative effect on an ultimate receipt of that information. *Id.* at 662, (citing *GMRI,* 149 F.3d at 451–52).

The parties spend a good deal of time arguing over whether the "catalyst" theory is still a viable basis for determining whether a plaintiff has "substantially prevailed" in light of the United States Supreme Court decision in *Buckhannon Bd. & Care Home v. West Virginia,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001).[2] In *Buckhannon,* the Supreme Court rejected the catalyst theory and held that to "prevail" under the Fair Hous-

ing Act and American's with Disabilities Act, a plaintiff must obtain a "judicially sanctioned change in the legal relationship of the parties." *Id.* at 605. The Court stated that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." *Id.* "A plaintiff [must] receive at least some relief on the merits of his claim before he can be said to prevail." *Id.*

■ The Sixth Circuit has not yet addressed whether the *Buckhannon* standard replaces the GMRI standard for analysis of attorney fee awards in FOIA cases. Although Buckhannon was not a FOIA case, the Supreme Court did note that federal fee-shifting statutes should be interpreted consistently and referred to a list of such statutes, which included FOIA. *Id.* Since Buckhannon, two other circuits have applied its standard to FOIA cases. *See Oil, Chem. and Atomic Workers Int'l Union v. Dept. of Energy,* 288 F.3d 452 (D.C.Cir.2002); *Union of Needletrades, Indus., & Textile Employees v. INS,* 336 F.3d 200 (2d Cir.2003). The Sixth Circuit has applied *Buckhannon* to attorney fee awards in cases under § 1983. *See Dubuc v. Green Oak Township,* 312 F.3d 736, 754 n. 8 (6th Cir.2002). The *Buckhannon* standard applies to awarding attorney fees under FOIA.[3]

AutoAlliance says that is has substantially prevailed because Customs' release of documents after litigation began was not voluntary and Customs acted only at the direction of the Court. Customs, however, says that its release was voluntary or as a

---

2. In *GMRI,* decided prior to *Buckhannon,* the Court of Appeals for the Sixth Circuit found it irrelevant that the plaintiff "did not obtain a court order compelling the agency to produce the requested documents" since the lawsuit was a "catalyst" to the release of the records. *Id.* at 451–42.

3. As both parties note, another judge in this district has applied the *GMRI* "catalyst" standard in a FOIA case decided after *Buckhannon. See Comer v. IRS,* 2002 WL 31835437 (E.D.Mich. Oct.30, 2002) (unpublished).

result of administrative appeals, as evidenced by the lack of a court order compelling release of documents.

■ AutoAlliance's position is well taken. As to count I, although the Court did not order Customs to release documents in a written order, it did order Customs to conduct a review of the withheld documents at several hearings. Customs' reviews resulted in the release of additional documents. At the hearing on Customs' motion for summary judgment, the Court found that certain documents must be released and directed Customs to conduct a further review. As detailed fully in AutoAlliance's brief, Customs ultimately released in full or in part all but 52 of the requested documents. The 52 documents were the subject to an *in camera* review in which the Court found that all but 3 of 52 documents were properly withheld. In light of the history of this case, Customs' release of the documents was pursuant to a "judicially sanctioned change in the legal relationship of the parties." AutoAlliance has therefore substantially prevailed as to count I.

As to count II, it is clear that AutoAlliance substantially prevailed; the Court found that Customs improperly assessed AutoAlliance audit fees.[4]

Thus, AutoAlliance has demonstrated that it is eligible for an award of attorneys' fees and costs as a substantially prevailing party.

### 2. Entitlement

As to entitlement, the Court considers the following factors: "[1] the benefit to the public deriving from the case; [2] the commercial benefit to the complainant and the nature of its interest in the records; and [3] whether the agency's withholding [of the records] had a reasonable basis in law." *GMRI,* 149 F.3d at 452, citing *De-*

*troit Free Press, Inc. v. Department of Justice,* 73 F.3d 93, 98 (6th Cir.1996).

### a. Public Benefit

As another judge in this district has stated:

> The public a unique interest in the enforcement and vindication of the FOIA. Each time an agency disregards its obligation to diligently answer and provide information in response to FOIA requests, the public is harmed. In the same sense, the public interest is served when, as in the case at bar, a court refuses to condone the agency's behavior by ignoring its unreasonable conduct.

*Comer v. I.R.S.,* 2002 WL 31835437, *2 (E.D.Mich. Oct.31, 2002) (unpublished) (citations omitted).

■ Customs argues that there is no public benefit because its conduct was not unreasonable. Customs says that the "missteps" which resulted in releasing additional documents after further review does not evidence unreasonable conduct. However, as described in AutoAlliance's brief, Customs vigorously fought against release and continuously changed its reasons for withholding documents. Missteps or not, its conduct was unreasonable. Customs did not begin to seriously examine AutoAlliance's requests until after suit was filed. Overall, the public interest is benefitted by holding Customs responsible for its failure to release documents.

### b. Commercial Benefit

The second factor examines whether the plaintiff planned to profit from information obtained through FOIA requests. *Comer,* 2002 WL 31835437 at *2. AutoAlliance says that although the information it sought was to understand why certain development costs were dutiable, and there-

---

4. However, given the issues in this case, it is fair to say that AutoAlliance's victory was *de* *minimus* and likely involved more in expense than in success.

fore had a monetary purpose, it did not intend to profit from the information. Rather, it simply sought to ensure that it was not paying the government more than it was lawfully owed.[5] The Court agrees and finds that this factor favors an award of attorneys' fees and costs.

### c. Reasonable Basis in Law

■ Finally, the third factor examines whether Customs had a reasonable basis in law for withholding the documents. AutoAlliance says that Customs did not have a reasonable basis as evidenced by the fact that of the over 6,000 of pages of documents requested, over 90% of them were released in full or in part, either during the administrative process or after Court-directed reviews. AutoAlliance also points to the Court's ruling that Customs erroneously assessing AutoAlliance audit fees. Customs argues that its conduct was reasonable as evidenced by the fact that the Court ordered release of 3 documents following the *in camera* review.

AutoAlliance's position is well taken. Customs' argument ignores the history of the case. While not unappreciative of Customs' continuously releasing documents throughout this case, the Court finds AutoAlliance has met its burden as to this factor.[6]

In short, AutoAlliance is eligible and entitled to attorneys' fees and costs associated with this case.

### B. Amount of Attorneys' Fees and Costs

AutoAlliance requests $167,040 in attorneys' fees. This amount represents work performed by six attorneys, with billing rates ranging from $400/hour to $175/hour and one paralegal, with a billing rate of $150.00/hour.

Customs says that these amounts are not reasonable. Customs says that while AutoAlliance has asserted that its billing rates are reasonable for attorneys in Washington D.C., it has not shown that the rates are reasonable in the Eastern District of Michigan. Customs says that the maximum rate should be $200/hour and the other attorneys' rates be adjusted accordingly.

■ Customs' position is well-taken. The billing rates are out-of-line with billing rates for this district. The State Bar of Michigan's Economic Survey for 2000 shows that the upper end billing rate in Downtown Detroit for the year 2000 was $333/hour. Rather than adjust each attorney's billing rate, the Court will allow a flat billing rate of $200/hour, which is slightly less than the average of all of the attorneys' billing rates and is a reasonable rate for this case.

■ Customs also objects to the number of hours worked. In particular, Customs says that AutoAlliance should not be allowed to recover fees for time spent responding to Customs' motion to dismiss for failure to exhaust administrative remedies because, as the Court found, AutoAlliance clearly filed this case before exhausting such remedies. The Court agrees. These fees are not recoverable.

AutoAlliance requests $8376.21 in costs. Customs objects to the $2201.61 costs for automated research. While the Sixth Circuit has not ruled on the issue, the Court will not award this amount as costs. *See*

---

**5.** Customs points out that even if AutoAlliance was improperly charged, it forfeited its rights to challenge the duties because it failed to act timely in the Court of International Trade. Even if true, AutoAlliance still had a right to know why and how the duties were charged.

**6.** This finding is in no way a reflection on counsel for Customs. The Court has no way of knowing why it was necessary to "jaw bone" this case to a successful conclusion.

*United States v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 173 (2d Cir.1996).

Finally, Customs requests an opportunity to respond more fully to AutoAlliance's billing records and costs. It will have the opportunity to do so.

### IV. Conclusion

Accordingly, AutoAlliance's motion for attorneys' fee and costs is GRANTED. AutoAlliance shall file a detailed statement within 20 days consistent with this order. Customs shall have 20 days thereafter to respond.[7] The Court offers the following: Attorney fee petitions have the tendency to take on a life of their own. The Court has already expended a significant amount of time on this case. The parties are strongly encouraged to agree on a reasonable amount of attorneys' fees and costs and submit a proposed final judgment consistent with this order.

SO ORDERED.

---

7. There will be no oral argument unless a party believes it would be helpful to a better understanding as the amount of attorneys' fees and costs to be awarded.