RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 08a0157p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

B&G MINING, INC. and OLD REPUBLIC INSURANCE
COMPANY,

                                            *Petitioners*,

      *v.*

DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES DEPARTMENT OF
LABOR, and DANNY BENTLEY,

                                            *Respondents.*

No. 07-3162

_____

On Petition for Review of a Final Order
of the Benefits Review Board.
No. 06-0304 BLA.

Argued: March 13, 2008

Decided and Filed: April 16, 2008

Before: CLAY and McKEAGUE, Circuit Judges; BOYKO, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Mark E. Solomons, GREENBERG TRAURIG LLP, Washington, D.C., for Petitioners. Miller Kent Carter, MILLER KENT CARTER & MICHAEL LUCAS PLLC, Pikeville, Kentucky, for Respondents. **ON BRIEF:** Mark E. Solomons, Laura Metcoff Klaus, GREENBERG TRAURIG LLP, Washington, D.C., for Petitioners. Miller Kent Carter, MILLER KENT CARTER & MICHAEL LUCAS PLLC, Pikeville, Kentucky, William Lawrence Roberts, WILLIAM LAWRENCE ROBERTS, P.S.C., Pikeville, Kentucky, for Respondents.

_____

## OPINION

_____

McKEAGUE, Circuit Judge. The claimant in this black-lung benefits case, Danny Bentley, received an award of benefits against his employer, B&G Mining, Inc., and the company's insurer, Old Republic Insurance Company (collectively, "B&G" or the "company"). At each level of review in the Department of Labor, the adjudicators awarded fees to Bentley's attorney under the

_____

[*] The Honorable Christopher A. Boyko, United States District Judge for the Northern District of Ohio, sitting by designation.

1

fee-shifting provision of the Black Lung Benefits Act, 30 U.S.C. § 932(a). On petition for review before this court, B&G argues that the adjudicators abused their discretion in the rates they used and the hours they approved.

For the reasons set forth below, we affirm the fee awards.

## I

Bentley filed a claim for federal black-lung benefits with the Department of Labor in August 2001. In May 2005, the Administrative Law Judge (the "ALJ") awarded him benefits. Although B&G initially appealed the award to the Benefits Review Board (the "BRB"), the company voluntarily dismissed the appeal and accepted liability for the award of benefits. Neither party raises any issue regarding the benefits award.

Bentley's attorney filed three petitions for fees totaling $23,688.00. This amount included work he performed before the District Director, the ALJ, and the BRB. In each petition, he asked for a rate of $250/hour. He submitted a statement in support of each petition. The statements were identical and listed his twenty-five years of experience in representing claimants with occupational diseases; his expertise in the field; his average fee of $250/hour for workers' compensation and social security disability benefits cases; the relatively high risk of loss in black-lung benefits cases; and the relatively low number of attorneys who practice in the field in the Eastern District of Kentucky.

The District Director reduced the fee to $200/hour for work performed before his office. He explained that the work was routine and that the rate was comparable to rates charged by other highly qualified, experienced attorneys within the same geographical location. The District Director also subtracted hours for work performed outside the time the claim was pending and for work spent on a prior claim.

On a separate petition, the ALJ approved a rate of $250/hour after noting that rates of $225/hour and $250/hour had been used in prior cases and citing the attorney's experience and expertise in black-lung benefits cases. As to the hours billed, the ALJ reduced the requested amount by seven hours for time spent on matters not before the ALJ and for time involving some routine correspondence.

On appeal, the BRB found no abuse of discretion and affirmed the District Director's and ALJ's awards. The BRB also considered the petition for fees for work performed before the board. It reduced the rate to $225/hour due to the nature and complexity of the case. It also subtracted six hours from the claimed 14.25 hours for duplicative work and work unrelated to the appeal before the board.

In total, claimant's attorney was awarded fees of $16,618.75 for 69.25 hours of work.

## II

On appeal, B&G contends that the District Director, the ALJ, and the BRB failed to apply the correct legal standard in determining the appropriate hourly rate. The company also argues that some of the hours awarded were excessive and duplicative. The company's arguments are considered in turn.

## A.       Standard of Review

We review an administrative adjudicator's award of attorneys' fees for abuse of discretion. *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007) (citing *Geier v. Sundquist*, 372 F.3d 784, 789 (6th Cir. 2004)); *Zeigler Coal Co. v. Director, OWCP*, 326 F.3d 894, 902 (7th Cir. 2003) ("[W]e give great deference to the views and conclusions of the ALJ."). "'Not only is the [adjudicator] in a much better position than the appellate court to make this determination, but neither the stakes nor the interest in uniform determination are so great as to justify microscopic appellate scrutiny.'" *Zeigler Coal*, 326 F.3d at 902 (quoting *Ustrak v. Fairman*, 851 F.2d 983, 987 (7th Cir. 1988)). "'An abuse of discretion exists when the [adjudicator] applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'" *Gonter*, 510 F.3d at 616 (quoting *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 647 (6th Cir. 1993)).

## B.       Attorneys' Fees Under the Black Lung Benefits Act

Section 28 of the Longshore and Harbor Workers' Compensation Act (the "Longshore Act"), 33 U.S.C. § 928, incorporated into the Black Lung Benefits Act, 30 U.S.C. § 932(a), provides for the award of fees and costs to a successful claimant's attorney. The Department of Labor promulgated regulations covering, among other things, the factors to be considered in fixing the amount of award in black-lung benefits cases. Specifically, 20 C.F.R. § 725.366 provides in relevant part:

> (b) Any fee . . . shall be reasonably commensurate with the necessary work done and shall take into account the quality of the representation, the qualifications of the representative, the complexity of the legal issues involved, the level of proceedings to which the claim was raised, the level at which the representative entered the proceedings, and any other information which may be relevant to the amount of fee requested.

The parties do not dispute that claimant's attorney was eligible to receive a fee award. Rather, they disagree on what constitutes a reasonable fee rate and reasonable time expended on claimant's behalf.

## C.       The Lodestar Method of Calculating Fees

The first issue to resolve is whether the lodestar method of calculating fees should apply to black-lung benefits cases. The lodestar method is deceptively simple: the fee amount equals "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Claimant's attorney argues that § 725.366(b) provides the necessary guidance for adjudicators to fashion appropriate awards and that applying the lodestar method would be an unwarranted deviation from the regulation that would provide little in terms of specific criteria to consider.

This court has not directly addressed whether the lodestar method is applicable to black-lung benefits cases. Although there is no binding precedent, reason and the weight of authority confirms that the lodestar method is the appropriate starting point in these cases.

In general, similar statutory language should beget similar judicial treatment. Section 28 of the Longshore Act provides that "a reasonable attorney's fee" will be paid to a prevailing claimant's attorney. 33 U.S.C. § 928(a). That phrase is comparable to those found in other federal fee-shifting

statutes, including the Solid Waste Disposal Act and the Clean Water Act,[1] both of which were at issue in *City of Burlington v. Dague*, 505 U.S. 557 (1992). The Supreme Court directed in *Dague* that its "case law construing what is a 'reasonable' fee applies uniformly to all" of the similar fee-shifting statutes. It went on to explain:

> The "lodestar" figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence. We have established a "strong presumption" that the lodestar represents the "reasonable" fee, [*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,] 478 U.S. [546], 565, 106 S. Ct. [3088], 3098 [(1986) ("*Delaware Valley I*")], and have placed upon the fee applicant who seeks more than that the burden of showing that "such an adjustment is necessary to the determination of a reasonable fee." *Blum v. Stenson*, 465 U.S. 886, 898, 104 S. Ct. 1541, 1548, 79 L. Ed. 2d 891 (1984) (emphasis added).

*Id.* at 562. In line with *Dague* and an earlier decision, *Hensley v. Eckerhart*, a panel of this court explained that "[b]ecause the same standards are generally applicable in all cases in which Congress has authorized an award of fees to a prevailing party, this [c]ourt relies on precedents involving attorneys fees without regard to whether they involved Title VI or some other federal statute." *Johnson v. City of Clarksville*, No. 06-6478, 2007 WL 4293080, at *2 (6th Cir. Dec. 7, 2007) (unpublished) (internal citation and quotation marks omitted).

Recent decisions of this and other circuit courts, while not binding precedent, do weigh in favor of using the lodestar method in black-lung benefits cases. In *Harman v. McGinnis, Inc.*, No. 07-3073, 2008 WL 344707, at *1 (6th Cir. Feb. 7, 2008) (unpublished), a panel of this court relied on the lodestar method as the "starting point" in determining a reasonable attorneys' fee in a Longshore Act case. Similarly, the Ninth Circuit has approved of a district court's application of the lodestar method in a Longshore Act case. *Tahara v. Matson Terminals, Inc.*, 511 F.3d 950, 955 (9th Cir. 2007) ("Use of the 'lodestar method' to calculate attorney's fees under a federal fee-shifting statute is proper." (citations omitted)). In trying to distinguish these and other similar decisions involving the Longshore Act, claimant's attorney argues that the Department of Labor specifically modified the methodology applicable to black-lung benefits cases when it promulgated § 725.366(a). Yet, the D.C. Circuit rejected that very argument in *National Mining Ass'n v. Department of Labor*, 292 F.3d 849 (D.C. Cir. 2002). The appellants in that case argued that the criteria listed in the regulation overlapped with the criteria used in calculating the lodestar rate; thus, applying the regulations would result in a form of double-counting against the lodestar. Concluding to the contrary, the D.C. Circuit explained, "Not only does nothing in the revised regulation require such double counting, but the Secretary interprets the regulation to mean that 'the factors identified in § 725.366(b) do not supplant the "lodestar" method of calculating reasonable fees, or enhance the lodestar fee once it is calculated.'" *Id.* at 875 (quoting the brief submitted by the Secretary of the Department of Labor); *see also Black Lung Deskbook*, Workers' Compensation Benefits Review Board, U.S. Dep't of Labor, Part XI § A.1 (rev. Nov. 2004) (paraphrasing the D.C. Circuit's decision in *National Mining Ass'n*). This is consistent with the Supreme Court's decision in *Delaware Valley I*. The Court explained that the typical factors considered in determining the appropriate fee rate—novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation—are fully reflected in the lodestar. *Delaware Valley I*, 478 U.S. at 564-65 (citing *Blum*, 465 U.S. at 898-901). Given the similarity of the fee-shifting provision in the Longshore Act with other federal fee-shifting statutes, as well as the Secretary's position in *National Mining Ass'n* that the department's regulations do not supplant or

---

[1]There are material differences between the fee-shifting provision found in the Longshore Act and those found in other federal statutes. *See Day v. James Marine, Inc.*, 518 F.3d 411, 414, 418-19 (6th Cir. 2008). The Longshore Act's requirement that the award cover only "a reasonable attorney's fee" is, however, similar in language to other federal fee-shifting statutes.

enhance the lodestar method, we conclude that the lodestar method is the appropriate starting point for calculating fee awards under the Black Lung Benefits Act.

**D.     Calculating the Lodestar Rate**

"To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Gonter*, 510 F.3d at 618 (quoting *Geier*, 372 F.3d at 791). "The appropriate rate, therefore, is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *Id.* (citing *Lamar Adver. Co. v. Charter Twp. of Van Buren*, 178 F. App'x 498, 502 (6th Cir. 2006) (unpublished) ("Even if it would be reasonable to award [plaintiff] $370 per hour, the record supports the district court's conclusion that $200 per hour is sufficient to encourage competent lawyers in the relevant community to undertake legal representation.")). An adjustment can then be made to the lodestar rate if the attorney's efforts resulted in "exceptional success." *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005) (quoting *Blum*, 465 U.S. at 895).

**E.     The Adjudicators' Awards**

**1.     The Rates**

None of the adjudicators used the term "lodestar" in making their awards. What they failed to say in word, however, they did in deed.

Claimant's attorney has extensive experience in black-lung benefits cases and is, by all accounts, highly qualified in this area of the law. In arriving at a rate of $200/hour, the District Director referred to similar rates charged by comparable attorneys in the same geographical area, as well as the routine nature of the case. Likewise, the ALJ pointed to the attorney's experience and expertise and noted that hourly rates of $225/hour and $250/hour had been approved in recent black-lung benefits cases. While the BRB did not state that the rate it awarded ($225/hour) was based on a market rate for comparable attorneys doing similar work, it did select a rate at the median between the other two rates. If both $200 and $250 represent reasonable approximations of the going rate for like work and like experience, it is hard to fathom how $225 does not as well.

B&G contends that the adjudicators abused their discretion by considering awards made in prior cases. As a general proposition, rates awarded in other cases do not set the prevailing market rate—only the market can do that. Rates from prior cases can, however, provide some inferential evidence of what a market rate is, just as state-bar surveys of rates provide evidence of a market rate, but themselves do not set the rate. *See Amax Coal Co. v. Director, OWCP*, 312 F.3d 882, 894-95 (7th Cir. 2002) (affirming fee rate of $200/hour based in part on similar fee awards in prior comparable cases); *Peabody Coal Co. v. Estate of Goodloe*, 299 F.3d 666, 672 (7th Cir. 2002) (in affirming a rate of $200/hour, the court noted that the attorney had recovered that same rate "in a number of similar cases"); *Harmon*, 2008 WL 344707, at *3 (in affirming a rate of $250/hour in a Longshore Act case, the panel explained that "courts are permitted to, and indeed should, consider prior fee awards in determining the proper attorney's fee rate" (citing *Blanchard v. Bergeron*, 489 U.S. 87, 91 n.5 (1989)); *see also Gonter*, 510 F.3d at 618 & n.6 (referring to an Ohio State Bar Association survey of hourly billing rates "[a]s a point of reference"). This court, in fact, approved a fee of $200/hour to claimant's attorney in a different black-lung benefits case. *See Kentucky Carbon Corp. v. Blankenship*, No. 02-3508, order at 1 (6th Cir. June 12, 2003) (explaining that while at the top of what the court would award (in 2003), the rate was "justified . . . by counsel's expertise, which apparently allowed him to expend far fewer hours than normally required in such cases").

Reliance on awards in earlier cases might not be warranted in all instances. For example, where there is a relatively large number of similarly experienced attorneys in the same geographic

and practice areas, there will likely exist a robust market rate with which to compare the attorney's requested rate. However, where there is only a relatively small number of comparable attorneys, like here, an adjudicator can look to prior awards for guidance in determining a prevailing market rate.[2]

B&G next argues that the adjudicators double counted factors that were already taken into consideration by a reasonable lodestar rate. The company also takes issue with the proposition that there could be three different rates. On the factors, B&G is correct that the adjudicators referred to the attorney's professionalism, performance, and the nature and complexity of the case. As noted above, these and other factors are presumed to be reflected in the selected lodestar rate. Yet, mere reference is not necessarily double counting. There is nothing in the adjudicators' decisions to suggest that they impermissibly enhanced the respective lodestar rates based on any of the identified factors. Rather, it appears that they pointed to these factors as justifying the selection of a rate near or at the top of the market for legal representation in this field. It should be emphasized that "the market" for legal counsel is not a commodity market with a single price, but rather a service market with various price points based on education, experience, specialty, complexity, etc. By looking, for example, to the level of experience, an adjudicator could reasonably conclude that a more experienced attorney would command a higher market rate than a less seasoned one, ceteris paribus. That a less experienced attorney might command a rate of $150/hour and a more experienced attorney might command a rate of $300/hour would not offend the sensibilities of a reasonable client. Thus, an adjudicator might need to consider one or more of the "reflected" factors to determine where the particular attorney's representation lies along the spectrum of the market for legal services. This and other courts have routinely referred to factors like experience and complexity in justifying a particular lodestar rate. *See, e.g., Zeigler Coal*, 326 F.3d at 902 (affirming hourly rate awarded by ALJ based in part on "the quality of the legal representation provided, the qualifications of [claimant's] counsel, and the complexity of the legal issues involved in the case"); *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995) (explaining that a reasonable rate is one based on a market rate in the community for services rendered by attorneys of comparable skill, experience and reputation); *Dixie Fuel Co. v. Callahan*, 136 F. Supp. 2d 659, 666 (E.D. Ky. 2001) (determining a lodestar rate based in part on "the skills and performance of plaintiff's counsel").

As to the purported internal inconsistency of three different rates, such inconsistency does not necessarily mean that the adjudicators abused their discretion. This is not a case in which a single adjudicator based a fee award on three different hourly rates. Rather, the BRB was reviewing the awards of two separate adjudicators for an abuse of discretion, as well as making its own award de novo. Because hourly rates are not set on the trading floor, reasonable differences in opinion about what constitutes the appropriate rate can be expected. Nor is this a case in which the various rates were widely divergent. The Board's rate equaled 112.5% of the District Director's rate and 90% of the ALJ's rate. Simply put, B&G has not shown how relatively minor differences in rates constitute an abuse of discretion.

B&G further argues that the adjudicators ignored its evidence of market rates. B&G submitted evidence that attorneys performing legal work for insurance companies in these types of cases typically earn $125/hour. Yet, the rates received by those attorneys are undoubtedly affected by several factors, including volume of work and prompt payment. Attorneys who represent claimants, on the other hand, likely do not benefit from the same high volume of work. Moreover,

---

[2]Looking to past cases also violates the Administrative Procedure Act (the "APA"), according to B&G, for doing so "relies on evidence outside the record." Appellants' Br. at 18. Courts and tribunals routinely consider awards in prior decisions, not as binding precedent but as inferential evidence of what constitutes a reasonable hourly rate, as noted above. "[I]t is common for courts to take judicial notice of prior judgments and to use them as prima facie evidence of the facts stated in them." *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 412 (6th Cir. 2006) (citations omitted). Doing so does not violate the APA.

as evidenced by the briefs and letters submitted by claimant's attorney asking for expedited payment, attorneys who represent claimants often face a significant delay in getting paid. A delay in payment can justify a higher hourly rate. *Barnes*, 401 F.3d at 745 (citing *Missouri v. Jenkins*, 491 U.S. 274 (1989) for the proposition that a higher rate to compensate for a delay in payment was "within the contemplation of the attorneys fees statute"). Accordingly, B&G has not shown that the adjudicators abused their discretion in failing to comment upon the company's countervailing evidence.

Finally, B&G points out that the risk of loss cannot be considered in fashioning a reasonable hourly rate. In his statements in support of his fee requests, claimant's attorney stated that the adjudicators should consider the risk of loss in these types of claims when determining a reasonable rate. That is plainly wrong. Federal courts and the BRB have all recognized that compensation for the risk of loss is already factored into any reasonable hourly rate. *Dague*, 505 U.S. at 565 ("And we see a number of reasons for concluding that no contingency enhancement whatever is compatible with the fee-shifting statutes at issue."); *Black Lung Deskbook*, Part XI § A.7.b (stating that "risk of loss is a constant factor in black lung litigation and is deemed incorporated into the hourly rate"). With that said, there is no indication that any of the adjudicators actually relied upon the risk of loss in determining a reasonable hourly rate.

In sum, we find that the adjudicators had sufficient factual support for the rates they selected. While claimant's attorney would have been well served by submitting an affidavit from an experienced attorney in the same or similar field attesting to that attorney's customary rate and the rates prevalent in the market, the adjudicators did not abuse their discretion by considering the rates awarded in past black-lung benefits cases, which were in line with the requested rate. The adjudicators appropriately placed little to no weight on the company's evidence of rates received by attorneys performing insurance-defense work as well as claimant's attorney's statement regarding risk of loss. Thus, having concluded that the rates are reasonable, we turn our attention to the hours.

### 2.          The Hours

B&G takes issue with the number of hours approved by the adjudicators. The company argues that the hours submitted covered some clerical work and were excessive in light of the work performed. It maintains that time spent receiving or filing correspondence is not reimbursable. Finally, it contends that the adjudicators should not have approved billing in quarter-hour increments.

Each argument fails. The adjudicators reviewed the work entries and struck hours that they considered excessive or primarily clerical in nature. For example, the ALJ noted the company's objection to multiple entries for receiving, reviewing and filing correspondence. While reviewing correspondence can constitute legal work, receiving and filing correspondence presumably constitutes clerical work. *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004). The ALJ noted that 11.25 hours were billed for receiving, reviewing and filing or drafting correspondence and subtracted three hours from this amount for routine or clerical work. As to the quarter-hour increments, the regulations require that the fees be submitted in such increments. 20 C.F.R. § 802.203(d)(3). While attorneys who record their time in quarter-hour increments might overbill their clients, attorneys who bill in tenth-hour increments might also overbill—the risk exists under both methods. As long as the total number of billable hours is reasonable in relation to the work performed, the award should be affirmed. Because the record confirms that the adjudicators carefully reviewed the time submitted and because they are "in a much better position than the appellate court to make th[ese] determination[s]," *Zeigler Coal*, 326 F.3d at 903, we find no abuse of discretion as to the hours awarded.

**III**

Mindful of the Supreme Court's instruction that a request for attorneys' fees must not metastasize into "a second major litigation," *Hensley*, 461 U.S. at 437, courts give considerable deference to the fees awarded by district courts and administrative adjudicators. In keeping with this broad deference, we find no abuse of discretion in the fees awarded in this case, as explained above. Accordingly, we AFFIRM.