RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0206p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

DANIEL L. DOUCETTE (20-5592); SHERRY DENISE TAYLOR (20-5632),

         *Plaintiffs-Appellants*,

    *v.*

COMMISSIONER OF SOCIAL SECURITY,

         *Defendant-Appellee*.

> Nos. 20-5592/5632

─────────────────

Appeals from the United States District Court for the Eastern District of Kentucky at Pikeville.
Doucette: No. 7:16-cv-00075—Danny C. Reeves, District Judge;
Taylor: No. 7:18-cv-00071—Joseph M. Hood, District Judge.

Argued: July 28, 2021

Decided and Filed: September 2, 2021

Before: GUY, GIBBONS, and GRIFFIN, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:** Elizabeth Bewley, Julia M. Prochazka, WILMER CUTLER PICKERING HALE AND DORR LLP, Boston, Massachusetts, Daniel S. Volchok, Arpit K. Garg, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, D.C., Evan B. Smith, APPALRED LEGAL AID, Prestonsburg, Kentucky, for Appellants. Laura H. Holland, SOCIAL SECURITY ADMINISTRATION, Denver, Colorado, Charles P. Wisdom, Jr., Cheryl D. Morgan, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

————————————

**OPINION**

————————————

GRIFFIN, Circuit Judge.

In these consolidated cases, plaintiffs sought attorney's fees from the federal government under the Equal Access to Justice Act ("EAJA"). Both district courts awarded fees, but not in the amounts requested. Plaintiffs appeal, arguing that one district court erred by holding that the EAJA does not authorize fees for work performed after the judgment becomes final and that both district courts abused their discretions by awarding below-market hourly rates. We agree on both points, so we vacate the district courts' fee awards and remand.

I.

Attorney Eric Conn represented plaintiffs Daniel Doucette and Sherry Taylor (and thousands of other claimants) in seeking disability benefits from the Social Security Administration ("SSA"). But it turned out that Conn was a fraudster; he bribed doctors to certify false disability applications and bribed an administrative law judge to approve those applications. *See Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 793 (6th Cir. 2018). All told, Conn caused the SSA to pay out millions of dollars in fraudulent benefits and fees.

After Conn's scheme came to light, the SSA identified over 1,700 applications that it believed were tainted by his fraud and redetermined these applicants' eligibility for benefits. *Id.* at 794. Many former Conn clients took issue with how the SSA redetermined eligibility, however, and years of litigation ensued. In *Hicks*, we held that the SSA's redetermination procedures violated due process and the Administrative Procedure Act. *Id.* at 813.

Before *Hicks* issued, the SSA redetermined plaintiffs' eligibility for benefits and denied their applications. They each filed a civil action for judicial review. *See* 42 U.S.C. § 405(g).

Taylor's case was immediately stayed pending the *Hicks* decision. The SSA then moved to remand to the agency. The district court granted the SSA's motion and sent her case back to the agency via a judgment. Taylor then moved for attorney's fees under the EAJA. She sought

an hourly rate of $203 for 9.1 hours of work, for a total of $1,847.30.  The SSA agreed that a fee award was appropriate but argued for a lower rate and disqualification of certain hours.  Taylor filed a reply, addressing the SSA's arguments and requesting additional attorney's fees for the four hours required to prepare the reply.  As explained in detail below, the district court decided that the statutory rate of $125 was appropriate and that only hours worked before the deadline to appeal were compensable under the EAJA.  *Taylor v. Berryhill*, No. 7:18-cv-071, 2019 WL 3068449, at *4, *6 (E.D. Ky. July 12, 2019).  Because Taylor's attorney had drafted the reply after the time to appeal had expired, the district court disallowed those hours and awarded only $1,137.50 in attorney's fees.  *Id*. at *6–7.

Doucette's case involved more substantive legal work.  The district court initially decided his challenge to the SSA's decision on the merits, granting summary judgment in favor of the Commissioner.  Doucette appealed and filed an opening brief in this court.  But when we issued *Hicks*, the SSA agreed to remand to the agency.  After that remand, Doucette filed a motion for attorney's fees in the district court, requesting an hourly rate of $207.67 for 41.8 hours worked, for a total of $8,680.61.  The SSA agreed with this request in full.  The district court, however, reduced the hourly rate to $150, resulting in a fee award of $6,270.  *Doucette v. Saul*, No. 7:16-075, 2020 WL 1695491, at *2 (E.D. Ky. April 7, 2020).

Taylor and Doucette appealed the district courts' reductions of their fee requests, and we consolidated their appeals for review.

II.

Plaintiffs challenge the district courts' EAJA fee awards.  According to the Supreme Court, the EAJA's "specific purpose" "is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions."  *Comm'r of I.N.S. v. Jean*, 496 U.S. 154, 163 (1990).  To this end, the EAJA allows a Social Security claimant who successfully challenged the SSA's denial of benefits in federal court to seek reasonable attorney's fees from the government.  28 U.S.C. § 2412(d)(1)(A); *see Coursey v. Comm'r of Soc. Sec.*, 843 F.3d 1095, 1097 (6th Cir. 2016).  And because "Congress intended the EAJA to cover the cost of *all* phases of successful civil litigation addressed by the statute," the Supreme Court has allowed claimants

to receive "fees-on-fees" (i.e., attorney's fees incurred while pursuing attorney's fees for the substantive portion of the case). *Jean*, 496 U.S. at 166 (emphasis added).

The district court "shall" award reasonable attorney's fees "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." § 2412(d)(1)(A). Here, the SSA has conceded that fee awards are appropriate; the only question is how much those awards should be. To calculate fee awards, district courts use the lodestar amount, which is the "product of the number of hours billed and a reasonable hourly rate." *Minor v. Comm'r of Soc. Sec.*, 826 F.3d 878, 881 (6th Cir. 2016) (citation omitted). The EAJA provides that hourly rates shall be determined "based upon prevailing market rates for the kind and quality of the services furnished," but also imposes a presumptive cap of $125 per hour. § 2412(d)(2)(A). A court can exceed the cap if it "determines that an increase in the cost of living or a special factor . . . justifies a higher fee." *Id.* A fee applicant "bear[s] the burden of producing appropriate evidence to support [a] requested increase." *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 450 (6th Cir. 2009).

We review "a district court's award or denial of EAJA attorney's fees for an abuse of discretion." *Minor*, 826 F.3d at 882. "[A] district court abuses its discretion when it relies on clearly erroneous findings of fact, when it improperly applies the law, or uses an erroneous legal standard[.]" *Id.* (citation and brackets omitted). We also provide "substantial deference" to a district court's lodestar calculation, "but only when the court provides a 'clear and concise explanation of its reasons[.]'" *Id.* (citation omitted). A district court thus abuses its discretion to determine a fee award when it "fails to explain its reasoning adequately or to consider the competing arguments of the parties." *Garner v. Cuyahoga Cty. Juvenile Court*, 554 F.3d 624, 643 (6th Cir. 2009) (citation omitted).

A.

We first address the *Taylor* court's ruling that the time spent on her reply brief could not be compensated for under the EAJA. The court reasoned that, because the EAJA allows a prevailing party to recover attorney's fees "incurred by that party in any civil action," 28 U.S.C. § 2412(d)(1)(A), only fees incurred *during* a civil action were compensable. *Taylor*, 2019

WL 3068449, at \*5.  The court determined that an "action is said to terminate at judgment."  *Id*. (citation omitted).  And because the EAJA defines "final judgment" as "a judgment that is final and not appealable," § 2412(d)(2)(G), the district court concluded that "a civil action terminates in the EAJA context once a judgment has been entered and the time to appeal ha[s] expired for all parties."  *Taylor*, 2019 WL 3068449, at \*6.  The reply was drafted after the time to appeal expired, so the district court held that the EAJA did not authorize fees for this work because it was not incurred during a civil action.  *Id*.

Standing alone, this reasoning may seem sound enough.  But upon closer examination, it quickly falls apart.

To begin, the district court's narrow definition of "civil action" does not align with the Supreme Court's interpretation of that term.  Although "[a]ny given civil action can have numerous phases[] . . . the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items."  *Jean*, 496 U.S. at 161–62.  The EAJA's use of "civil action" thus includes both the substantive portion of a case and the associated fee litigation.  *See id*. at 162 (declining to subject an application for fees-on-fees "to an additional substantial justification defense").  Moreover, where proceedings "are 'necessary to the attainment of the results Congress sought to promote by providing for fees, they should be considered part and parcel of the action for which fees may be awarded.'"  *Id*. (quoting *Sullivan v. Hudson*, 490 U.S. 877, 888 (1989)).  And the Supreme Court has recognized—without qualification—that "Congress intended the EAJA to cover the cost of *all* phases of successful civil litigation addressed by the statute."  *Id*. at 166 (emphasis added).

If Supreme Court precedent was not enough, other parts of the EAJA also cut against the district court's hard-and-fast deadline for fee eligibility.  Section 2412(d)(1)(B) provides the timeframe for seeking an EAJA fee award:

> A party seeking an award of fees and other expenses shall, *within thirty days of final judgment in the action*, submit to the court an application for fees and other expenses . . . .

28 U.S.C. § 2412(d)(1)(B) (emphasis added).  As the district court noted, the EAJA defines "final judgment" as "a judgment that is final and not appealable."  § 2412(d)(2)(G).  Thus,

Congress contemplated that fee applicants would have up to 30 days *after* a judgment became non-appealable to begin the fee-seeking process. But if an attorney takes full advantage of this time and prepares a fee application after the appeal deadline but before the 30-day period's end, the *Taylor* court's rule bars him from receiving any compensation for that work. This rule thus creates the strange possibility of a fee application that is both *timely* and *not compensable*—a result at odds with the statute's purpose and authorization of "fees-on-fees" awards.

Or consider another hypothetical. A plaintiff files her fee application before the time to appeal has expired, but the government opposes her request. The district court schedules oral argument on the application and the hearing occurs after the judgment becomes final. Under the *Taylor* court's interpretation of the EAJA, plaintiff would be able to receive attorney's fees for the time spent drafting the application, but not the time spent arguing in support of that application at the hearing. To borrow the Supreme Court's words, "[w]e find no textual or logical argument for treating so differently a party's preparation of a fee application and its ensuing efforts to support that same application." *Jean*, 496 U.S. at 162. This sentiment rings just as true when considering a reply filed in support of a fee application.

Moreover, the district court's rule is an ill-fit for modern fee-shifting litigation. The court's holding hinged on its observation that an "action is said to terminate at judgment." *Taylor*, 2019 WL 3068449, at *5 (citation omitted). To support this proposition, it relied on a treatise published in 1885. *See id.* (citing 1 Morris M. Estee, *Estee's Pleadings, Practice, and Forms* § 3, at 1 (Carter P. Pomeroy ed., 3d ed. 1885)). Although judgment might have been the end of every lawsuit in the nineteenth century—when the pay-your-own-lawyer regime known as the "American Rule" was ubiquitous, *see generally Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 247–70 (1975)—the past century has seen the enactment of more than 200 fee-shifting provisions in the federal sphere alone. *See* Henry Cohen, CONG. RESEARCH SERV., 94-970, Awards of Attorneys' Fees by Federal Courts and Federal Agencies 63–113 (2007) (available at https://apps.dtic.mil/sti/pdfs/ADA465374.pdf). Like the EAJA, many of these statutes require a fee recipient to be a prevailing party, and the most common way to prevail is to obtain an "enforceable judgment[] on the merits." *Buckhannon Bd. and Care Home, Inc. v. West*

*Virginia Dept. of Health and Hum. Res.*, 532 U.S. 598, 604 (2001).  Thus, when fee litigation is authorized, it usually occurs after judgment.

To be sure, the American Rule still predominates in this country and judgment typically marks a case's end.  But saying that post-judgment fee litigation is not part of civil actions today ignores the realities of how lawsuits filed under fee-shifting statutes work.  These kinds of actions do not terminate at judgment.

The SSA's defense of the district court's ruling largely misses the point.  The SSA relies exclusively on the abuse-of-discretion standard, arguing that the district court "reasoned that the fees were not compensable because they were not expended litigating the merits of Taylor's case and because Taylor did not actually prevail in this aspect of the fee litigation in the sense that her arguments for a heightened hourly rate under the EAJA were rejected."

The district court, however, did not decide compensability as a matter of discretion.  Instead, it viewed the task before it as "determin[ing] the meaning of some of the terms within the [EAJA] to determine if the reported time at issue is compensable."  *Taylor*, 2019 WL 3068449, at *4.  For that task, it observed that "[t]he language of the statute is a good place to start . . . and . . . is also the ending point if the plain meaning of the statutory language is clear," *id.*—a sure sign of statutory interpretation, which typically triggers de novo review by this court, *see Roberts v. Hamer*, 655 F.3d 578, 582 (6th Cir. 2011).  The district court then examined the EAJA's text, dictionary definitions, a treatise, and the "procedural history of amendments to the EAJA and the congressional record," before concluding that "fees arising out of fee litigation *may not* be incurred once the civil action has terminated," and that Taylor's requested post-final-judgment time "is not compensable under the EAJA."  *Taylor*, 2019 WL 3068449, at *5–6 (emphasis added).

True, the district court at one point alluded to reasons why it thought awarding fees for Taylor's reply would be an "odd result."  *Taylor v. Berryhill*, No. 7:18-cv-071, 2020 WL 1921550, at *5 (E.D. Ky. April 20, 2020) (order denying reconsideration).  But these few sentences come after the court discussed at length why it could not "circumvent" the EAJA's "statutory requirement."  *Id.*; *Taylor*, 2019 WL 3068449, at *4–6.  And, more importantly, the

district court never went so far as to offer its concerns as an alternative basis for denial.  *Taylor*, 2020 WL 1921550, at *5.  Simply put, this was a legal determination of ineligibility, not an exercise of discretion.

In sum, we do not believe that "Congress would throw the Social Security claimant a lifeline it knew was a foot short" by disallowing fees incurred after final judgment.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 630 (1990) (citation and internal quotation marks omitted).  Instead, we hold that courts can award attorney's fees for work performed during "all phases of successful civil litigation addressed by the [EAJA]," *Jean*, 496 U.S. at 166, even if that work is done after the judgment becomes final.  Because the district court's interpretation of the EAJA was legal error, we vacate that portion of the *Taylor* order and remand for the district court to decide whether attorney's fees should be granted for the hours spent preparing Taylor's reply.

## B.

We next turn to plaintiffs' argument that the rates awarded by the district court are unreasonable because they are far below the prevailing market rate.  No one disputes that plaintiffs offered evidence sufficient to justify an upward adjustment of the EAJA's statutory cap.  And this evidence established a range of comparable hourly market rates between $205 and $500.  However, the district courts denied plaintiffs' requested rates and settled on rates of $125 and $150 for two reasons:  Judges in the Eastern District of Kentucky usually award only $125 per hour in social security cases, and plaintiffs' relatively simple cases did not justify straying too far from this practice.  *See Taylor*, 2019 WL 3068449, at *3; *Doucette*, 2020 WL 1695491, at *2.

We agree with plaintiffs that the district courts' hourly-fee determinations were abuses of discretion.  First, the courts placed undue weight on prior fee awards while dismissing—without explanation—plaintiffs' evidence of current market conditions.  Although prior fee awards can "provide some inferential evidence of what a market rate is," they "do not set the prevailing market rate—only the market can do that." *B&G Mining, Inc. v. Dir., Office of Workers Comp. Programs*, 522 F.3d 657, 664 (6th Cir. 2008).  District courts should therefore hesitate to give controlling weight to prior awards when presented with other credible evidence of the current

market for legal services.  *See Dillard v. City of Greensboro*, 213 F.3d 1347, 1355 (11th Cir. 2000).  That is especially true when, as here, the other evidence is unrefuted.

And the EAJA's presumptive statutory cap presents a special reason to avoid reliance on prior fee awards whenever possible:  Awarding a $125 rate usually has nothing to do with current market conditions or the value of comparable legal services.  Instead, courts often default to that rate because the claimant has failed to substantiate his request for a higher one.  Take, for example, the cases relied on by the district courts here.  *See Gibson v. Colvin*, No. 2:12-131, 2013 WL 6191754, at *3 (E.D. Ky. Nov. 26, 2013) (awarding a $125 rate because the plaintiff "ha[d] not satisfied her burden demonstrating that the fees should be increased for this matter."); *Roberts v. Berryhill*, No. 5:12-139, 2017 WL 2311870, at *2 (E.D. Ky. May 26, 2017) ("[P]laintiff[] has not demonstrated to the Court that the prevailing market rate in the Eastern District of Kentucky exceeds the statutory rate."); *Carson v. Colvin*, No. 13-94, 2015 WL 5304627, at *2 (E.D. Ky. Sep. 8, 2015) ("There is no indication, however, that the general private practice rates cited by Plaintiff reflect the prevailing market rate for competent representation in social security cases in the Central Division of the Eastern District of Kentucky." (citation, internal quotation marks, and brackets omitted)).

Unlike those cases, plaintiffs here more than substantiated their requested rates. Although relying on prior fee awards "may be proper in the absence of any credible evidence by the fee applicant of a higher prevailing market rate," *Farbotko v. Clinton Cty.*, 433 F.3d 204, 210 (2d Cir. 2005), summarily dismissing the applicant's evidence and treating prior default EAJA awards as dispositive holds other plaintiffs' shortcomings against the applicant, *see Dillard*, 213 F.3d at 1355.  Because we see no principled reason for such an approach, we hold that the district courts abused their discretions by giving unreasonable weight to prior fee awards.

The district courts' silent decisions to disregard plaintiffs' evidence also misinformed how these cases' complexity factored into their awards.  Plaintiffs' unrefuted evidence established a market range between $205 and $500.  Yet the district courts concluded that the relative simplicity of the actions justified rates of only $125 and $150—even though there is no evidence that any lawyer in the relevant communities would accept these rates for any kind of service on even the simplest of case.  The complexity of the action is relevant to determine

"where the particular attorney's representation lies along the spectrum of the market for legal services." *B&G Mining*, 522 F.3d at 665. It cannot be invoked to justify a rate *below* the established spectrum. Accordingly, the district court's consideration of the cases' complexity was also an abuse of discretion.

III.

For these reasons, we vacate the district courts' fee awards. We remand *Taylor* for the district court to decide whether plaintiff should receive fees for the hours spent preparing the reply. We remand both cases for the district courts to determine the appropriate hourly rate given the market range established by plaintiffs and for further proceedings consistent with this opinion.