**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NEWPORT NEWS SHIPBUILDING AND
DRY DOCK COMPANY,

*Petitioner,*

v.

HARRY HOLIDAY; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION
PROGRAMS,

*Respondents.*

No. 08-1129

HARRY HOLIDAY,

*Petitioner,*

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS; NEWPORT
NEWS SHIPBUILDING AND DRY DOCK
COMPANY,

*Respondents.*

No. 08-1122

On Petitions for Review of an Order
of the Benefits Review Board.
(BRB-07-0870)

Argued: September 22, 2009

Decided: December 29, 2009

Before NIEMEYER and DUNCAN, Circuit Judges,
and James P. JONES, Chief United States District Judge for
the Western District of Virginia, sitting by designation.

---

Affirmed in part, vacated in part, and remanded by published
opinion. Judge Duncan wrote the opinion, in which Judge
Niemeyer and Judge Jones joined.

---

## COUNSEL

**ARGUED**: Jonathan Henry Walker, MASON, MASON,
WALKER & HEDRICK, PC, Newport News, Virginia, for
Newport News Shipbuilding and Dry Dock Company. Joshua
Thomas Gillelan, II, LONGSHORE CLAIMANTS
NATIONAL LAW CENTER, Washington, D.C., for Harry
Holiday. **ON BRIEF**: Ralph R. Lorberbaum, ZIPPERER,
LORBERBAUM & BEAUVAIS, Savannah, Georgia, for
Harry Holiday.

---

## OPINION

DUNCAN, Circuit Judge:

Newport News Shipbuilding and Dry Dock Company
("Newport News") and Harry Holiday ("Holiday") petition
and cross-petition for review from a final order of the Depart-
ment of Labor's Benefits Review Board (the "BRB"). The
BRB held that Newport News had not provided substantial
evidence to rebut a presumption of compensability that the
Longshore and Harbor Workers' Compensation Act (the
"LHWCA") provided Holiday once he made out his prima
facie case of workplace related aggravation-injury. The BRB
also awarded Holiday's appellate counsel $250 per hour,

down from his requested hourly rate of $420 per hour, and deducted 1.05 hours from the total time he claimed. For the reasons set forth below, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

I.

Holiday worked as a longshoreman for Newport News from early 2001 until February 2004. He worked principally as a nuclear pipefitter at the main yard, but occasionally took overtime assignments at the nearby Copeland industrial park ("Copeland Park").[1] On Saturday, January 31, 2004, Holiday was assembling metal racks at Copeland Park when he experienced pain in his back. Holiday reported the pain to his supervisor there, but declined medical attention. On February 10, 2004, Holiday was at work in the main yard, drilling holes in boxes for mounting. This required him to press down on a drill and bend over repeatedly to pick up the boxes. At one point, Holiday bent over to reach a box on the ground and felt his back give out. He stood hunched over, unable to move, until discovered by two colleagues who escorted him to the medical clinic.

In December 2004, Holiday filed a claim for total temporary disability compensation under the LHWCA with the District Director for the Department of Labor, in Norfolk, Virginia.[2] Because Holiday had moved to Augusta, Georgia by this time, his case was assigned to an Administrative Law Judge (an "ALJ") in Savannah. The ALJ held a hearing. He first found that Holiday sufficiently alleged a back injury on Janu-

---

[1]The parties stipulate that Holiday suffered an injury on January 31 at Copeland Park, a job site beyond the LHWCA's auspice, and that he was working at a site within the LHWCA's domain—the main shipyard—on February 10 when his back gave out.

[2]Holiday did not file for compensation under the LHWCA until December 2004 because he was receiving compensation under Virginia's workers' compensation program.

ary 31, and a worsening of the condition on February 10. Therefore, under the terms of the LHWCA, the ALJ credited Holiday with a prima facie case of compensability, creating a presumption of recovery under § 920(a) of that statute.

After he determined that Holiday had established a prima facie case, the ALJ found that Newport News had provided substantial evidence to rebut the presumption, knocking it out of play. To make this finding, the ALJ expressly relied on three pieces of evidence from that which Newport News provided.

First, the ALJ relied on Holiday's accident questionnaire, completed on February 26, 2004. It stated that Holiday's back began to hurt on January 31, but that he finished out the weekend of overtime and returned to his regular shifts on Monday, though with continued pain. Despite this pain, Holiday consistently declined medical attention. Then on February 10, his back still hurt but spasmed when he bent over to pick up a box; at that point, Holiday sought medical attention.

Second, the ALJ considered deposition testimony of Newport News shipyard supervisor Richard T. Jay. Jay deposed that Holiday had not gone to work on Monday, February 2, but had worked the rest of the week, mostly driving a forklift and doing work requiring him to bend and lift twenty- to thirty-pound pieces of materiel. During that period, Holiday also complained periodically about his back.[3]

Third, the ALJ relied on two responses provided by Holiday in his "Claim for Compensation" form. As to where the accident occurred, Holiday filled in: "Building 610, Copeland Park, Newport News, VA; back gave out while in shipyard." J.A. 113. When asked for a description of the accident, Holi-

---

[3]Holiday's counsel before the ALJ specifically asked Jay if Holiday's condition got progressively worse throughout the week, and Jay deposed that he did not know.

day noted: "Employee was working in Bldg. 610 putting up racks to store material; later that day, back started bothering him; continued to work with increasing pain in back for a couple of weeks; then, while bending over to pick up a box, his back gave out." *Id.*

Evaluating the case without the presumption, the ALJ held for Newport News. Holiday appealed the ALJ's decision to the BRB, in Washington, D.C. On appeal, Holiday procured new counsel, Joshua T. Gillelan ("Gillelan"), based in Washington, D.C. Gillelan did all the work associated with the appeal in Washington. The parties did not appear before the BRB to argue. The BRB concluded that the ALJ relied upon insufficient evidence to find the presumption rebutted and reversed, remanding for the ALJ to reconsider the question in light of the entire evidentiary record. On remand, the ALJ considered all of the evidence that Newport News had put forward, but found it insufficient to rebut. Newport News moved the ALJ to reconsider. The ALJ granted the motion, but reached the same conclusion.

Newport News then appealed to the BRB, requesting only a summary affirmance, which is a predicate final order to petitioning this court for review. In its request, Newport News appealed "only the [BRB]'s ruling in its prior decision that [the] employer did not rebut the Section 20(a) presumption." J.A. 195. The BRB affirmed the ALJ's remand determinations, noting that Newport News had not challenged them.

In its appeal, Newport News protested Gillelan's application for his fee award, to which he was entitled under the LHWCA for successfully appealing the ALJ's initial determination. Gillelan had requested an award of $9,420, based on an hourly rate of $420 per hour and a total of 22 hours of work on the appeal. Gillelan based his request on his belief that he should be paid a fee commensurate with other Washington, D.C. attorneys. The BRB disagreed, stating that $250 per hour would be a reasonable hourly rate in Georgia. The

BRB also disallowed 1.05 hours of Gillelan's claimed time of 22 hours, holding that it was not sufficiently related to litigation before the BRB.

Having obtained a final order, Newport News petitioned this court for review of the BRB's legal conclusion on the question of substantial evidence. Gillelan cross-petitioned for review of his fee award. We possess jurisdiction over a petition and cross-petition for review of a final BRB order under 33 U.S.C. § 921(c).

## II.

We first address Newport News's petition. We review the BRB's legal conclusions de novo. *Scott v. Mason Coal Co.*, 289 F.3d 263, 267 (4th Cir. 2002). We examine the record independently to determine whether the ALJ's initial decision was supported by substantial evidence. *Id.*

The Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*, provides a form of workers' compensation to maritime employees. To state a claim for compensation, a claimant must at least "allege (1) an injury or death (2) that arose out of and in the course of (3) his maritime employment." *Universal Mar. Corp. v. Moore*, 126 F.3d 256, 262 (4th Cir. 1997). Under the LHWCA, "injury" can be either a new harm, or the aggravation of an existing condition. *Newport News Shipbuilding & Dry Dock Co. v. Fishel*, 694 F.2d 327, 329 (4th Cir. 1982). Once a claimaint makes out a prima facie case by properly alleging a claim, § 920(a) of the LHWCA provides a presumption of compensability, stating that "the claim comes within the provisions of this chapter." 33 U.S.C. § 920(a); *see Moore*, 126 F.3d at 262. To rebut the § 920(a) presumption, the employer must provide "substantial evidence" to undermine the claim. *See, e.g.*, *Moore*, 126 F.3d at 262. Where the claimant makes out a prima facie case alleging the aggravation of a previous injury, the employer may rebut with substantial evidence demonstrating that the

claimant's symptoms are a natural outgrowth of, or complication from, an existing predicate condition.[4] *See Admiralty Coatings Corp. v. Emery*, 228 F.3d 513, 517-18 (4th Cir. 2000); *Dir., OWCP v. Newport News Shipbuilding & Dry Dock Co.*, 138 F.3d 134, 138 (4th Cir. 1998).

Before we can review the BRB's decision below, we must clarify the precise issue before us. When Newport News appealed to the BRB, its appeal was limited to "only . . . the [BRB]'s ruling in its prior decision that [the] employer did not rebut the Section 20(a) presumption." J.A. 195. As mentioned, the BRB did not consider the ALJ's decisions on remand because Newport News did not request that. We therefore find that Newport News has waived its challenge to consideration of anything other than the determination the ALJ made in his first hearing. On appeal, we will consider only whether the three pieces of evidence the ALJ relied on in his first determination amount to substantial evidence.[5]

The substantial evidence standard of proof requires the employer to put forward as much relevant factual matter as a reasonable mind would need to accept, as one rational conclu-

---

[4]Section 908(f), however, requires employers to pay the entire amount of the weekly benefits to employees who are injured on the job, "even if the ultimate disability is due in part to a pre-existing disability." *Newport News*, 138 F.3d at 138. That said, "if the ultimate disability is 'materially and substantially greater' than that which would have resulted from the work-related injury without the pre-existing condition, then the employer need only pay those benefits for 104 weeks (2 years)." *Id.*

[5]We are aware that the failure to preserve arguments by waiving them in the administrative forum is not a jurisdictional bar to our review. *Toler v. E. Associated Coal Co.*, 43 F.3d 109, 113 (4th Cir. 1995). But, the equitable factors counseling us to excuse such a lapse are not present here. *Cf. Rana v. United States*, 812 F.2d 887, 889-90 n.2 (4th Cir. 1987) (noting that more than 50 percent of claimants typically proceed pro se or with representation by their Union). Further, our previously stated interests in preserving the exhaustion requirement and respecting agency expertise are present here. *Cf. Thorn v. Itmann Coal Co.*, 3 F.3d 713, 717 (4th Cir. 1993).

sion, that the employee's injury did not arise out of his employment. *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998). The standard requires more than a scintilla of evidence, but it is not a preponderance standard. *Norfolk Shipbuilding & Drydock Corp. v. Faulk*, 228 F.3d 378, 386 (4th Cir. 2000). The employer need not show that natural causes more likely than not explain the employee's symptoms, it need only provide enough facts to support one rational conclusion. *See Moore*, 126 F.3d at 263.

In this case, the BRB reversed because the three pieces of evidence on which the ALJ relied in his initial decision failed to address the material change in Holiday's condition that occurred while he worked on February 10. Newport News argues that by proving the existence of the January 31 injury, which caused the same symptoms as the February 10 injury, it proffered substantial evidence that the second injury was merely a natural outgrowth of the first. We disagree.

The three pieces of evidence relied upon by the ALJ in his first determination demonstrate that Holiday injured his back on January 31 and experienced a continuation of pain thereafter. But as the BRB recognized, they do not respond to the fact that on February 10, Holiday's back materially worsened while he repeatedly bent over to pick up boxes and drill them.[6] To accept as substantial evidence that which addresses the former occurrence but not the latter would be to eviscerate the aggravation component as a freestanding claim for relief under the LHWCA. Thus, we find that the evidence relied upon by the ALJ is, for the purpose of rebutting an allegation of an aggravation of a prior injury, no evidence at all.[7] *See*

---

[6]At oral argument, counsel for Newport News spent a considerable amount of time questioning the events of February 10, but those events appear undisputed in the record.

[7]In support of its argument that the BRB imposed too rigorous a burden, Newport News refers us to decisions by the Fifth and Seventh Circuits in which those courts reviewed BRB findings on substantial evidence. *See Ortco Contractors, Inc. v. Charpentier*, 332 F.3d 283 (5th Cir. 2003); *Am. Grain Trimmers, Inc. v. Dir., OWCP*, 181 F.3d 810 (7th Cir. 1999) (en banc). These cases, which do not control, are inapposite: they consider the weight of evidence that actually addressed the employee's claim.

*Bath Iron Works Corp. v. Dir., OWCP*, 109 F.3d 53, 56 (1st Cir. 1997). We agree that Newport News did not have to provide affirmative evidence directly ruling out an aggravation, and in fact we have previously so found. *See Moore*, 126 F.3d 263. But no matter the nature of the evidence, it is not substantial if it cannot respond to the prima facie case in the first place. *See Parsons Corp. v. Dir., OWCP*, 619 F.2d 38, 41 (9th Cir. 1980) ("The statutory presumption . . . may be overcome by evidence specific and comprehensive enough to sever the potential connection between the disability and the work environment.").

### III.

We next consider Gillelan's cross-petition for review of his fee. When assessing a fee award, we review the application of law to facts for abuse of discretion, making a closer examination when the criteria for determining a reasonable fee are called into question. *See Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1995). A tribunal "abuses its discretion when it acts arbitrarily or irrationally, fails to recognize judicially recognized factors constraining its exercise of discretion, relies on erroneous legal or factual premises, or commits an error of law." *United States v. Delfino*, 510 F.3d 468, 470 (4th Cir. 2007) (citing *United States v. Williams*, 461 F.3d 441, 445 (4th Cir. 2006); *United States v. Hedgepeth*, 418 F.3d 411, 419 (4th Cir. 2005)).

The LHWCA prohibits longshore claimants' attorneys from entering into fee agreements with their clients. Instead, when a claimant represented by counsel brings a successful appeal, "there shall be awarded . . . a reasonable attorney's fee against the employer or carrier in an amount approved by the deputy commissioner, Board, or court, as the case may be." 33 U.S.C. § 928(a). In this case, the parties agree that Gillelan has "succeeded" for purposes of obtaining a fee. The dispute is over what he should receive.

*Hensley v. Eckerhart* instructs that under a statutory fee-shifting provision, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." 461 U.S. 424, 433 (1983); *see also Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008).[8] Under this so-called "lodestar analysis", "[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433. The tribunal then determines an appropriate fee. *Id.*

A.

We consider the hourly rate first. The Department of Labor's regulation interpreting this provision states that "[t]he rate awarded by the Board shall be based on what is reasonable and customary in the area where the services were rendered for a person of that particular professional status."[9] 20 C.F.R. § 802.203(d)(4). In the usual case, we have said that an attorney identifies the appropriate hourly rate by demonstrating what similarly situated lawyers would have been able to charge for the same service. *See Depaoli v. Vacation Sales Assocs., L.L.C.*, 489 F.3d 615, 622 (4th Cir. 2007). Typically, this means an attorney will demonstrate the market rate for services in the geographic jurisdiction of the litigation. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009). However, the BRB has the power to set awards

---

[8]The LHWCA's fee-shifting requirement compels us to adopt a lodestar analysis for the BRB's fee determinations. *See City of Burlington v. Dague*, 505 U.S. 557, 561-62 (1992).

[9]The BRB has no authority to set policy for the Department of Labor and so receives no deference on its interpretation of the LHWCA. *Newport News Shipbuilding & Dry Dock Co. v. Dir., OWCP*, 477 F.3d 123, 125 (4th Cir. 2007) (citing *Potomac Elec. Power Co. v. Dir., OWCP*, 449 U.S. 268, 279 n.18 (1980)). We are therefore not obliged to defer to the BRB's view of the regulation, but will consider it ourselves to determine if the BRB has acted within its discretion in applying it. *See Wood v. U.S. Dep't of Labor*, 112 F.3d 592, 595–96 (1st Cir. 1997).

with reference to its own past determinations, *Newport News Shipbuilding & Dry Dock Co. v. Brown*, 376 F.3d 245, 251 (4th Cir. 2004), which undermines the ability of an attorney to make out a reasonable hourly rate with reference to what other attorneys earn for similar services. That said, lodestar analysis requires far more than consideration of just these factors.

The Supreme Court has recognized these twelve factors as guides to the tribunal's determination of a reasonable hourly rate in a lodestar analysis: (1) time and labor required; (2) novelty and difficulty of the questions; (3) requisite skill needed to perform the service properly; (4) preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Blanchard v. Bergeron*, 489 U.S. 87, 92 n.5 (1989); *Robinson*, 560 F.3d at 243-44. The ultimate conclusion rests with the tribunal, which is closer to the adjudication and has a better understanding of this inherently factual matter. *Goodwin v. Metts*, 973 F.2d 378, 384 (4th Cir. 1992) (citing *Hensley*, 461 U.S. at 437). The tribunal must assess an overall reasonable rate with actual attention to the facts of a given case, and provide "detailed findings of fact with regard to the factors considered." *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978); *see also Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 857 (7th Cir. 2009) ("A district court facilitates appellate review by making specific findings en route to a fee calculation, and therefore we have reversed when we could not discern whether the district court arrived at its fee award by using the proper factors.").

In this case, the BRB stated only that "the prevailing hourly rate for claimants' attorneys in the geographic area where this

case arose is $250." J.A. 197. The BRB then cited its ten-year old decision in *Hargrove v. Strachan Shipping Co.*, 32 BRBS 224, at *4 (1998), *aff'g on recon.*, 32 BRBS 11 (1998), in which it held that a successful Savannah-based attorney was entitled to $200 per hour, in keeping with fees it had awarded successful attorneys in that region. The BRB therefore took a ten-year old hourly rate, assumed it was a reasonable basis for an hourly rate today, and adjusted it upwards by the arbitrary amount of $50.

This is an abuse of discretion. The BRB generally can look to previous awards in the relevant marketplace as a barometer for how much to award counsel in the immediate case. *Brown*, 376 F.3d at 251. But, an hourly rate appropriate ten years ago, arbitrarily adjusted with no regard to the facts of the case or the lodestar factors, is not necessarily appropriate today. *See Barber*, 577 F.2d at 226; *see also Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1054-55 (9th Cir. 2009) (The BRB must "make . . . determinations [of the relevant community and the reasonable hourly rate] with sufficient frequency that it can be confident—and we can be confident in reviewing its decisions—that its fee awards are based on current rather than merely historical market conditions."). We therefore remand this matter to the BRB for a determination and explanation of the appropriate hourly rate.[10]

On remand, the BRB should consider the proper geographic market in which to determine the correct hourly rate. We have previously provided guidance on this issue. In *National Wildlife Federation v. Hanson*, we held that the "[t]he community in which the court sits is the appropriate

---

[10]Ordinary administrative principles counsel that on remand, the BRB determine the reasonable fee in the first instance. Congress has tasked the BRB with this, 33 U.S.C. § 928, and the Secretary of Labor has furthered that directive, 29 C.F.R. 802.203(d)(4). Where the Secretary has reasonably construed the LHWCA, we defer. *See Mowbray v. Kozlowski*, 914 F.2d 593, 598 (4th Cir. 1990) (deferring to the Secretary's interpretation of the Medicaid statute).

point for selecting the proper rate." 859 F.2d 313, 317 (4th Cir. 1988). However, we then identified a two-step test for tribunals to utilize when considering whether extrajurisdictional counsel were entitled to home market rates. First, tribunals should ask if extrajurisdictional counsel rendered services that were truly available in the visited market. *Id.* Second, tribunals should ask if the party that hired extrajurisdictional attorney chose reasonably, or whether they chose an unnecessarily expensive attorney. *Id.*

In *Rum Creek*, we looked specifically at extrajurisdictional appellate counsel. In that case, a West Virginia coal company hired a Virginia law firm to litigate complex questions on its behalf. The law firm satisfied the *Hanson* factors, and much of its work involved appellate litigation before this court, which sits in Richmond. We stated that as far as the appeals went, the *Hanson* test "need not even be considered." 31 F.3d at 179. *Rum Creek* does not suggest that appellate counsel automatically qualify for their home market rates; it recognizes that *Hanson* turns on inquiries about the lawyer and client, not the posture of the litigation. Thus, the BRB should consider *Hanson* and *Rum Creek* to decide if Gillelan's hourly rate should be determined with reference to Georgia or Washington, D.C.

Also, the BRB should explain how it determines a reasonable rate within the relevant geographic market. Gillelan argues that the BRB was constrained to consider the *Laffey* matrix because he is a Washington, D.C. attorney.[11] We disagree, for the mere fact that Gillelan practices in Washington, D.C. is insufficient to accord him that market, let alone any

---

[11]The *Laffey* Matrix, named for *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *overrruled on other grounds by Laffey v. Nw. Airlines, Inc.*, 746 F.2d 4 (D.D.C. 1984), is a fee schedule purporting to provide hourly rates for attorneys of a broad spectrum of practice experience and expertise in Washington, D.C. *See* http://www.laffeymatrix.com/see.html.

rate within it. Further, the *Laffey* matrix is a useful starting point to determine fees, not a required referent. *See Grissom*, 549 F.3d at 322. The BRB may consider, but is not bound by, the *Laffey* matrix.

B.

Next, we consider the 22 hours Gillelan claimed. The LHWCA's fee-shifting sections divide the labor between trial counsel's and appellate counsel's fees. 33 U.S.C. §§ 928(b), (c). Meanwhile, 29 C.F.R. § 802.203(d)(4) states that the fee the BRB awards must reasonably relate to work before the BRB. In this case, the BRB deducted 1.05 hours from Gillelan's total requested time because it found those hours insufficiently related to appellate work. This was not an abuse of discretion.

Gillelan spent 0.65 hours attempting to obtain the record from the BRB so that the ALJ could conduct his remand consideration. As Gillelan concedes that he spent this time so that Holiday could have his (second) day before the ALJ, these actions clearly did not reasonably relate to appellate work. The remaining 0.4 hours of the 1.05 hours at issue represent slightly less than half of the 0.9 hours that Gillelan claims he spent "securing and reviewing a copy of the ALJ's decision on remand [from the BRB] and preparing the fee application." Cross-Petitioner's Br. 58. Gillelan argues that obtaining the remand decision was necessary because the LHWCA requires a successful appeal before he could apply for his fee. But, Gillelan knew his client had succeeded when the BRB issued its summary affirmance order, so he had no need for the underlying ALJ determination. Gillelan did not provide evidence specifying what portion of the 0.9 hours he spent obtaining the ALJ determination,[12] so we will not say the BRB abused

---

[12]When applying for a fee, an attorney has the burden to make out the reasonableness of his hourly rate with specific evidence. *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987). There is no logical reason not to apply that principle to the hours aspect of the lodestar analysis.

its discretion in disallowing slightly less than half that time. The BRB therefore need not reconsider the total hours it awarded Gillelan.

## IV.

For the reasons provided, the final order of the BRB is

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED.*