**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-2038**

EASTERN ASSOCIATED COAL CORPORATION,

Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS; HAROLD
GOSNELL,

Respondents.

**No. 11-2380**

EASTERN ASSOCIATED COAL CORPORATION, LLC,

Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR; HAROLD GOSNELL,

Respondents.

On Petitions for Review of Orders of the Benefits Review Board.
(11-0131-BLA; 10-0384-BLA)

Argued: May 14, 2013                    Decided: July 31, 2013

Before WILKINSON, GREGORY, and KEENAN, Circuit Judges.

Affirmed as modified by published opinion. Judge Keenan wrote the opinion, in which Judge Wilkinson and Judge Gregory joined.

———————

**ARGUED**: Laura Metcoff Klaus, GREENBERG TRAURIG LLP, Washington, D.C., for Petitioner. Ryan Christopher Gilligan, WOLFE, WILLIAMS, RUTHERFORD & REYNOLDS, Norton, Virginia, for Respondents. **ON BRIEF**: Mark E. Solomons, GREENBERG TRAURIG LLP, Washington, D.C., for Petitioner. Joseph E. Wolfe, WOLFE, WILLIAMS, RUTHERFORD & REYNOLDS, Norton, Virginia, for Respondents.

———————

BARBARA MILANO KEENAN, Circuit Judge:

In this appeal, we consider a former employer's challenges to attorneys' fees and other related fees awarded under the Black Lung Benefits Act (the BLBA), 30 U.S.C. §§ 901 through 945. After Harold Gosnell, the claimant, was awarded black lung benefits, claimant's counsel successfully petitioned the administrative law judge (the ALJ) for an award of recoverable fees. The Benefits Review Board (the BRB) affirmed the ALJ's fee award and also awarded certain fees for additional work performed before the BRB.

We consider the issue whether the awards of attorneys' fees properly reflected market-based evidence of counsel's hourly rate, as required by the lodestar analysis in Hensley v. Eckerhart, 461 U.S. 424 (1983). We also address whether the practice of quarter-hour billing by claimant's counsel resulted in an excessive number of hours billed in this case. Upon our review, we hold that neither the ALJ nor the BRB abused its discretion in concluding that counsel provided sufficient market-based evidence of rates, and that the number of hours billed for attorneys' services reasonably reflected the work completed. However, we further hold that the award of fees for work performed by certain legal assistants was not supported fully by the record, and we modify that award accordingly. We

3

therefore affirm the attorneys' fee awards entered in this case, and modify the fees awarded for legal assistant services.

I.

In 2005, the claimant filed a claim for benefits under the BLBA against his former employer, Eastern Associated Coal Corporation (Eastern). The claimant, who was a coal miner for seventeen years, had developed a mass on his right lung that required medical treatment. The medical evidence introduced in this proceeding addressed the issue whether the claimant suffered from "unilateral" complicated coal workers' pneumoconiosis, i.e., black lung disease affecting only one lung. Among other evidence bearing on the question, the two radiologists who offered expert testimony reached contrary conclusions on this unusual issue. Dr. William Scott explained that the incidence of pneumoconiosis in only one lung would be "incredibly atypical," and concluded that the mass in the claimant's right lung was not pneumoconiosis but rather likely resulted from an infection. Dr. Kathleen DePonte agreed that in the "classic" case, pneumoconiosis would affect both lungs, but she nevertheless opined that the claimant suffered from complicated coal workers' pneumoconiosis.

In 2010, the ALJ found that the claimant suffered from complicated coal workers' pneumoconiosis and awarded him

4

benefits under the BLBA. The benefits award is not at issue in this case.

The law firm representing the claimant, Wolfe, Williams, Rutherford & Reynolds (claimant's counsel), later filed a petition for attorneys' fees, seeking $35,953.75 for work relating to the proceedings before the ALJ.[1] In support of the petition, claimant's counsel stated the years of experience and the hourly rates of the various attorneys who had worked on the case. The petition represented that Joseph Wolfe had over thirty years' experience and charged $300 per hour for his services; that Bobby Belcher had sixteen years' experience and charged $250 per hour; and that W. Andrew Delph and Ryan Gilligan each had several years' experience and charged $200 and $175 per hour, respectively.

Claimant's counsel stated that it knew of "no other firms in Virginia and very few across the nation" that accept new black lung cases. Counsel further represented that black lung claimants ultimately are awarded benefits in only five percent of cases.

---

[1] This figure included over $1,000 in attorneys' fees sought by claimant's counsel to revise the fee petition, which the ALJ disallowed. Separately, claimant's counsel sought over $11,000 in expenses in the fee petition to the ALJ. The ALJ ultimately awarded about $2,300 of these requested expenses. Neither of these decisions is challenged on appeal.

Of central importance to this appeal, claimant's counsel also submitted for the ALJ's consideration a list of twenty-one prior fee awards issued in black lung cases handled by claimant's counsel. These awards had been made by seven different ALJs, all within several years of the present fee awards.

Claimant's counsel also submitted to the ALJ the Altman Weil Survey of Law Firm Economics (2006) (the Altman Weil Survey), which showed hourly rates for attorneys with varying degrees of experience in the "South Atlantic" and "Middle Atlantic" regions. Claimant's counsel additionally attached an itemized billing statement describing work done for the claimant in proceedings before the ALJ between February 2007 and March 2010.

In the petition, claimant's counsel similarly sought fees for work done by certain legal assistants at an hourly rate of $100. Claimant's counsel stated that $100 per hour was the firm's "customary billing rate" for legal assistants in black lung cases. But significantly, counsel did not provide any information regarding market rates for legal assistants, either in its list of prior fee awards or in the excerpt submitted from the Altman Weil Survey.

In October 2010, the ALJ issued an award of attorneys' fees to claimant's counsel. The ALJ first considered the hourly

6

rates requested by claimant's counsel, and found that there was sufficient evidence submitted of reasonable, prevailing hourly rates based on "multiple and consistent awards by diverse judges" over the previous four years. The ALJ found that the hourly rates listed in the Altman Weil Survey for the South Atlantic region also supported the hourly rates sought, given the nature of counsel's practice representing "black lung claimants [] over a broad region in Virginia and West Virginia." The ALJ additionally found that the hourly rate requested for work performed by legal assistants was appropriate. Accordingly, the ALJ approved the hourly rates requested.

Next, the ALJ considered whether the billed amount of 168.95 hours was reasonable. The ALJ disagreed with Eastern's argument that claimant's counsel necessarily had billed an excessive amount by using a quarter-hour billing system. The ALJ explained that quarter-hour billing was permitted under 20 C.F.R. § 802.203(d)(3) and, thus, that the use of such billing increments was not unreasonable per se. After examining the billing statement submitted by claimant's counsel, the ALJ disallowed various charges for clerical tasks and several other charges for tasks that were found to be either duplicative or unnecessary. In all, the ALJ reduced the number of billed hours by about thirty, and awarded claimant's counsel $31,628.75 in attorneys' fees rather than the amount of $35,953.75 originally

7

sought. The amount awarded by the ALJ included $3,675 for work performed by legal assistants. On review, the BRB affirmed the ALJ's award of attorneys' fees, concluding that the ALJ did not abuse his discretion either with respect to the hourly rates or to the number of hours awarded.

Claimant's counsel filed an additional fee petition to the BRB, seeking $3,675 for work performed primarily by attorneys Wolfe and Gilligan during the claimant's appeal. The supporting documentation incorporated the information presented in the attorneys' fees petition to the ALJ, including citation to the twenty-one prior fee awards, a description of the experience of claimant's counsel, and portions of the Altman Weil Survey. The primary difference in the submission to the BRB was that claimant's counsel requested an hourly rate of $225 for Gilligan, rather than the $175 rate used in the petition before the ALJ. Claimant's counsel also sought compensation for work performed by legal assistants at an hourly rate of $100.

In October 2011, the BRB granted the petition in part. The BRB determined that the prevailing market rate for Wolfe was $300 per hour, but concluded that Gilligan's market rate was only $175 per hour based on two prior fee awards.[2] The BRB also

_____

[2] The BRB noted that in the future Gilligan might be able to establish a higher market rate, but concluded that in this case (Continued)

8

approved an hourly rate of $100 for legal assistants. After making adjustments to the number of hours reasonably expended, the BRB awarded claimant's counsel $2,950 in attorneys' fees. This total amount awarded by the BRB included $125 for services performed by a legal assistant.

Eastern timely filed appeals seeking review of the fee awards issued by the ALJ and the BRB (the agency adjudicators). Those appeals were consolidated in this Court.

## II.

Eastern raises two challenges to the fee awards: (1) that claimant's counsel did not provide sufficient market-based evidence of an hourly rate, which was necessary for calculation of an applicable lodestar figure; and (2) that claimant's counsel requested an excessive number of hours as a result of its practice of quarter-hour billing. Eastern asks that we vacate the fee awards and remand for fee determinations reflecting "only reasonable hours at a market rate."

Before turning to address Eastern's arguments, we first discuss the legal framework governing awards of attorneys' fees under the BLBA. We review for abuse of discretion an award of

---

claimant's counsel only had "provided sufficient evidence of a market rate of $175."

attorneys' fees made under the BLBA, whether determined by an ALJ or by the BRB.  Kerns v. Consol. Coal Co., 176 F.3d 802, 804 (4th Cir. 1999).  An ALJ and the BRB are afforded wide latitude in crafting an appropriate award of attorneys' fees because they are much better situated than an appellate court to make this determination in the first instance.  See Westmoreland Coal Co. v. Cox, 602 F.3d 276, 288 (4th Cir. 2010) (noting the broad discretion afforded an ALJ in calculating a fee award); Zeigler Coal Co. v. Dir., OWCP, 326 F.3d 894, 902 (7th Cir. 2003) (recognizing that an ALJ is in a "much better position than the appellate court" to determine the "reasonableness of time spent by a lawyer on a particular task in the course of litigation") (citation omitted).  We apply the same deferential standard in our review of an award of other legal fees under the BLBA, including those incurred for the services of legal assistants. See Uphoff v. Elegant Bath, Ltd., 176 F.3d 399, 407-09 (7th Cir. 1999).  However, on appeal, we review more closely any challenges relating to the criteria used by agency adjudicators in fashioning such awards.  See Newport News Shipbuilding & Dry Dock Co. v. Holiday, 591 F.3d 219, 226 (4th Cir. 2009) (citing Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 174 (4th Cir. 1994)).  In sum, an award of attorneys' fees and related fees will be upheld unless "arbitrary, capricious, an abuse of

discretion, or contrary to law." Cox, 602 F.3d at 282 (citing Kerns, 176 F.3d at 804).

### A.

Under the BLBA, a miner who is totally disabled as a result of pneumoconiosis is entitled to benefits. 30 U.S.C. § 921(a); Cox, 602 F.3d at 282. Benefits may be awarded in contested cases after adjudication at the Department of Labor by a deputy commissioner, or on appeal to an ALJ, the BRB, or a federal court of appeals. U.S. Dep't of Labor v. Triplett, 494 U.S. 715, 717 (1990).

Although litigants generally must pay their own attorneys' fees in the absence of explicit statutory authorization, Key Tronic Corp. v. United States, 511 U.S. 809, 814-15 (1994), Congress has provided a fee-shifting mechanism for use in black lung cases. Counsel for a successful black lung claimant is entitled to an award of attorneys' fees under the BLBA, 30 U.S.C. § 932(a), which incorporates by reference Section 28 of the Longshore and Harbor Workers' Compensation Act (the LHWCA), 33 U.S.C. § 928. An award of attorneys' fees is "mandatory" in such cases, Day v. James Marine, Inc., 518 F.3d 411, 414 (6th Cir. 2008), and private fee agreements between attorneys and prospective black lung claimants are generally prohibited and may result in the imposition of criminal penalties. 33 U.S.C. § 928(e); see also 20 C.F.R. § 802.203(f); Triplett, 494 U.S. at

11

718 (stating that the LHWCA "prohibits an attorney from receiving a fee-whether from the employer, insurer, or [Black Lung] Trust Fund, or from the claimant himself-unless approved by the appropriate agency or court").

In this case, the claimant was successful in his claim for benefits under the BLBA. An attorney for a successful claimant in a BLBA proceeding is entitled to "reasonable attorney's fee[s]." 33 U.S.C. § 928(a). This term is not defined by statute. The party seeking attorneys' fees has the burden of proving that the rate claimed and the hours worked are reasonable. Hensley, 461 U.S. at 433; Holiday, 591 F.3d at 227.

The "lodestar" analysis provided in Hensley is the starting point for calculating an award of reasonable attorneys' fees.[3] 461 U.S. at 433. A lodestar amount is determined by multiplying "a reasonable hourly rate" by "the number of hours reasonably expended on the litigation."[4] Id. The lodestar amount is presumptively reasonable, and is presumed to be "sufficient to

_____

[3] Principles construing what constitutes a "reasonable fee" apply uniformly to federal fee-shifting statutes. See City of Burlington v. Dague, 505 U.S. 557, 562 (1992).

[4] As with other federal fee-shifting statutes, we apply the lodestar analysis to determine an award of reasonable attorneys' fees under 33 U.S.C. § 928(a). Holiday, 591 F.3d at 227 & n.8 ("[t]he LHWCA's fee-shifting requirement compels us to adopt a lodestar analysis for the BRB's fee determinations"); B & G Mining, Inc. v. Dir., OWCP, 522 F.3d 657, 663 (6th Cir. 2008) ("the lodestar method is the appropriate starting point for calculating fee awards under the [BLBA]").

12

induce a capable attorney to undertake the representation" of a meritorious case under the statutory fee-shifting scheme. Perdue v. Kenny A., 559 U.S. 542, ___, 130 S. Ct. 1662, 1672-73 (2010).

After the lodestar amount is calculated, however, the court or agency adjudicator may adjust that figure based on consideration of other factors. See Blanchard v. Bergeron, 489 U.S. 87, 94 (1989). In that regard, the Department of Labor has provided regulatory guidance on considerations relevant to the determination of an award of attorneys' fees in black lung benefits cases. The pertinent regulation provides, in material part:

> Any fee approved . . . shall be reasonably commensurate with the necessary work done and shall take into account the quality of the representation, the qualifications of the representative, the complexity of the legal issues involved, the level of proceedings to which the claim was raised, the level at which the representative entered the proceedings, and any other information which may be relevant to the amount of fee requested.

20 C.F.R. § 725.366(b). Thus, we also consider these factors in conjunction with the lodestar methodology. We observe, however, that to the extent that any of these factors already has been incorporated into the lodestar analysis, we do not consider that factor a second time. Such double-counting would distort the

13

proper weight to be accorded those factors.[5] See Perdue, 130 S. Ct. at 1673.

The BLBA also allows compensation for the services of legal assistants in cases involving a successful claimant. See 20 C.F.R. § 725.366; 20 C.F.R. § 802.203; see also Missouri v. Jenkins, 491 U.S. 274, 285 (1989) (noting the "self-evident proposition that the 'reasonable attorney's fee' provided for by statute [under 42 U.S.C. § 1988] should compensate the work of paralegals, as well as that of attorneys"). Claimant's counsel had the burden of justifying the hourly rates for such legal assistants. See Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 969-70 (D.C. Cir. 2004). The regulations provide that the rate awarded by the BRB for such services "shall be based on what is reasonable and customary in the area where the services

---

[5] Courts also have cited for consideration twelve factors originally articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). These twelve factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Hensley, 461 U.S. at 429-30 n.3 (citing Johnson, 488 F.2d at 717-19). However, consideration of these factors likewise is subject to the Supreme Court's admonition regarding double-counting. Perdue, 130 S. Ct. at 1673.

14

were rendered for a person of that particular professional status."[6]  20 C.F.R. § 802.203(d)(4).

We further observe that neither party before us has argued that a different methodology should be applied in the present case for assessing the appropriate hourly rate for work performed by the legal assistants.  Cf. Jenkins, 491 U.S. at 286-88 (explaining that legal assistant time could be billed separately at market rates if it is the prevailing practice in a given community, but "[i]f it is the practice in the relevant market not to do so, or to bill the work of [legal assistants] only at cost, that is all that [the attorneys' fee provision] requires").  We therefore review the agency adjudicators' determinations of legal assistants' hourly rates for compliance with the applicable regulations and an assessment whether the rates awarded were based upon a prevailing market rate.

B.

We address Eastern's challenges to both elements of the lodestar amount, namely, the reasonableness of the hourly rates and the number of hours reasonably expended.  We first consider Eastern's argument that the ALJ and the BRB abused their discretion by fixing claimant's counsel's hourly rates without

---

[6] The Secretary of Labor has interpreted Section 725.366 in a manner that is wholly compatible with the lodestar analysis. See Nat'l Mining Ass'n v. Dep't of Labor, 292 F.3d 849, 874-75 (D.C. Cir. 2002).

15

considering the prevailing market rate for their legal services. While acknowledging the statutory prohibition on private fee agreements for black lung claimants, Eastern nevertheless contends that the agency adjudicators were required to determine a reasonable hourly rate for claimant's counsel based on the rates in the relevant community charged by lawyers of "comparable skill, experience, and reputation." See Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). Thus, according to Eastern, the agency adjudicators should have considered what "fee-paying clients actually pay for this type of work in Norton, Virginia," a small community in Virginia where claimant's counsel has an office. Eastern further suggested at oral argument that regional hourly rates of attorneys in social security cases, criminal cases, or civil disputes could provide the necessary market-based evidence.

Eastern also challenges the agency adjudicators' reliance on prior attorneys' fee awards as evidence of the prevailing market rate. Eastern argues that prior fee awards can serve as evidence of a market rate only when the awards themselves are shown to have been "based on a market analysis." Additionally, Eastern contends that the other evidence relied on by the agency adjudicators to determine a reasonable hourly rate, namely, the Altman Weil Survey, was insufficient to determine market rates in this case. We disagree with Eastern, and conclude that the

16

agency adjudicators properly determined reasonable hourly rates for claimant's counsel.

In addition to supporting affidavits, an applicant seeking an award of attorneys' fees must submit "satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990) (citation and internal quotation marks omitted). The determination of a traditional "market rate" is especially problematic in the context of claims brought under the BLBA and the LHWCA, in view of their general prohibition of fee agreements between counsel and prospective claimants. See 33 U.S.C. § 928(e); 20 C.F.R. § 802.203(f); Cox, 602 F.3d at 290 (observing that "[t]he highly regulated markets governed by fee-shifting statutes are undoubtedly constrained and atypical"). However, despite such difficulties, a prevailing market rate still must be determined in BLBA and LHWCA cases before the relevant agency adjudicator may decide an attorney's reasonable hourly rate. Cox, 602 F.3d at 290; see also Blum, 465 U.S. at 895 (holding that "reasonable fees" must be "calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel").

Although Eastern challenges the reliability of prior fee awards as evidence of a prevailing market rate, our precedent

17

plainly permits consideration of such documentation.  Under that precedent, prior fee awards constitute evidence of a prevailing market rate that may be considered in fee-shifting contexts, including those prescribed by the BLBA and the LHWCA.

In a recent appeal of a fee award made under the LHWCA, the provisions of which are applicable in BLBA cases, we recognized that an agency adjudicator "generally can look to previous awards in the relevant marketplace as a barometer for how much to award counsel in the immediate case."  Holiday, 591 F.3d at 228 (citation omitted).  Indeed, we have held that "[e]vidence of fee awards in comparable cases is generally sufficient to establish the prevailing market rates in the relevant community."[7]  Newport News Shipbuilding & Dry Dock Co. v. Brown, 376 F.3d 245, 251 (4th Cir. 2004) (internal quotation marks omitted) (citing Spell v. McDaniel, 824 F.2d 1380, 1402 (4th Cir. 1987)).

Of course, prior fee awards do not themselves actually set the market rate.  B & G Mining, Inc. v. Dir., OWCP, 522 F.3d 657, 664 (6th Cir. 2008) (recognizing that "rates awarded in

_____

[7] Eastern's attempt to distinguish Brown on the basis that the employer "did not dispute the rates claimed" has no merit. Indeed, the hourly rate was contested by the employer "largely because the attorney's hourly rate of $225.00 [was] excessive," while the claimant in turn argued that the hourly rate was reasonable, "cit[ing] several recent orders in which administrative law judges and the Board have allowed him an hourly rate of $225.00 in LHWCA cases."  Brown, 376 F.3d at 251.

18

other cases do not set the prevailing market rate-only the market can do that"). However, such fee awards do provide "inferential evidence" of the prevailing market rate. Id. In cases such as the present one, in which there is no lawful billing rate, the prevailing market rate should be determined with reference to "the next best evidence," which includes, among other things, "evidence of fee awards the attorney has received in similar cases." See Spegon v. Catholic Bishop of Chi., 175 F.3d 544, 555 (7th Cir. 1999). Thus, in this respect, prior fee awards may serve as a "barometer" of the prevailing market rate. Holiday, 591 F.3d at 228.

The reasonable hourly rate ultimately used in the lodestar calculation depends on the prevailing market rate "in the relevant community for the type of work for which [claimant's counsel] seeks an award." Plyler, 902 F.2d at 277 (citation and internal quotation marks omitted). Thus, the greater the similarity in the work, the more relevant the hourly rate is to a determination of the prevailing market rate.

The ALJ and the BRB certainly were not limited to consideration of prior fee awards made in black lung cases. Cox, 602 F.3d at 290 (noting that "other administrative proceedings of similar complexity would also yield instructive information" about the prevailing market rate). However, it is unsurprising that, all other things being equal, the most

19

reliable indicator of prevailing market rates in a black lung case will be evidence of rates allowed in other black lung cases, rather than rates in general civil litigation, or, as suggested by Eastern, criminal defense work.[8]

Here, the agency adjudicators considered evidence of prior fee awards for the same type of work done by the same attorneys. Given the absence of private fee agreements in black lung cases, such prior fee awards undoubtedly qualify as one category of the "next best evidence" of a prevailing market rate. See Spegon, 175 F.3d at 555; see also B & G Mining, 522 F.3d at 664. Moreover, a party that argues that the best available evidence of a market rate was not offered must clearly demonstrate that the adjudicator abused its discretion in assessing the strength of the evidence presented. See Kerns, 176 F.3d at 804 (providing the standard of review). Eastern has not shown such an abuse of discretion.

Notwithstanding this fact, we emphasize that prior fee awards are not controlling authority establishing a prevailing market rate for later cases. Were that the case, the hourly

---

[8] Considerations other than the underlying nature of the work ultimately may be significant in determining a prevailing market rate. For example, we do not discount the possibility that evidence of hourly rates for slightly different work in a market locality or region could be more reliable evidence of a prevailing market rate than identical work performed in a distant market.

20

rates of attorneys could be predetermined by erroneous prior awards, or lose the capacity to respond to changing market conditions. See Farbotko v. Clinton Cnty. of N.Y., 433 F.3d 204, 209 (2d Cir. 2005) (observing that "[r]ecycling rates awarded in prior cases without considering whether they continue to prevail may create disparity between" compensation available under a fee-shifting scheme and that which is available in the market); Dillard v. City of Greensboro, 213 F.3d 1347, 1355 (11th Cir. 2000) (recognizing the "inferential evidentiary value" of prior awards but cautioning against giving them "controlling weight" over "superior evidence"). At the heart of the requirement that hourly rates be based on market indicators is "the ability of an attorney to [establish] a reasonable hourly rate with reference to what other attorneys earn for similar services," even when, as here, the market is difficult to define. See Holiday, 591 F.3d at 227. Application of this principle thereby ensures that attorneys have an incentive to take cases brought under fee-shifting statutes. See Perdue, 130 S. Ct. at 1672-73 ("the lodestar method yields a fee that is presumptively sufficient" to "induce a capable attorney to undertake the representation").

Eastern relies heavily on our recent opinion in Cox to argue that claimant's counsel has not submitted sufficient market-based evidence to support the fee awards. Eastern's

reliance on Cox is understandable on a superficial level because, in that case, we reversed an award of attorneys' fees to the very same attorneys involved in this case. Notably, however, the claimant's counsel in that case did not proffer evidence of prior fee awards received in similar cases. See Cox, 602 F.3d at 288-90.

Instead, claimant's counsel in Cox offered only the following submissions to support the asserted prevailing market rate: (1) the Altman Weil Survey; (2) counsel's assertion that he "knew of no other attorneys who currently handle black lung work in Virginia or take new cases"; (3) the low rates of success in black lung litigation; and (4) the contingent nature of the attorneys' fees. 602 F.3d at 289. Based on those submissions, we held that claimant's counsel did not establish a prevailing market rate. Id. at 290. In reaching this conclusion, we noted that there was a "range of sources" from which counsel could have drawn to support the petition for attorneys' fees, including, for example, "evidence of the fees [claimant's counsel] has received in the past," affidavits of other lawyers "who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community," and hourly rates in "other administrative

22

proceedings of similar complexity."[9]    Id. (emphasis added) (citations and internal quotation marks omitted).

In the present case, by providing inferential evidence of their prevailing market rates drawn from numerous prior fee awards, claimant's counsel has remedied the major evidentiary deficiency identified in Cox. Claimant's counsel have supported their petition for attorneys' fees with information regarding fee awards from prior black lung cases, including twenty-one cases in which Wolfe was awarded fees of $300 per hour, eight cases in which Belcher was awarded between $200 and $250 per hour, eleven cases in which Delph was awarded between $150 and $200 per hour, and three cases in which Gilligan was awarded between $125 and $175 per hour.[10]    These awards of attorneys' fees were issued by seven different ALJs and all were issued within a few years of counsel's fee petition filed in this case. We agree with the ALJ that the "multiple and consistent awards

---

[9] We also explained that, because a prevailing market rate is "presumed to incorporate considerations of risk of loss," it would be "duplicative" to increase counsel's hourly rate above the prevailing market rate to account for risk of loss in the black lung context. Cox, 602 F.3d at 290; see also B & G Mining, 522 F.3d at 666 (same).

[10] Eastern is correct that the fee award that we vacated in Cox was among those cited by claimant's counsel in support of its fee petition. However, our analysis is not altered by the exclusion of that one fee award from the substantial evidence of prevailing market rates established by the twenty remaining prior fee awards.

by diverse judges" shown in the submission by claimant's counsel constituted specific evidence of the prevailing market rates for those counsel. See Cox, 602 F.3d at 290.

We observe that claimant's counsel did not include in the record submitted to the ALJ or the BRB the actual awards reflecting such rates. The better practice surely would have been for counsel to attach such documentation to its fee petitions, especially when, as here, the prior fee awards were not readily accessible. In marginal cases, a failure to provide such documentation could undermine counsel's showing of a prevailing market rate.[11] In this case, however, claimant's counsel made representations, which Eastern did not dispute, about the rates fixed in those prior awards. Moreover, the ALJ was familiar with and reviewed prior fee awards he personally had rendered in several cases cited by claimant's counsel. See Spell, 824 F.2d at 1402 (holding that the prevailing market rate can be established with reference to "information concerning recent fee awards by courts in comparable cases").

---

[11] Contrary to Eastern's arguments, Cox did not render all preceding fee awards without evidentiary value unless the relevant agency adjudicator independently inquires into the evidence and analysis underlying that prior award to ensure it too followed applicable law. See Cox, 602 F.3d at 287-91. Here, given the evidence submitted by claimant's counsel pertaining to the prior attorneys' fee awards as well as other support for counsel's prevailing market rates, we are not presented with a marginal case, much less a case requiring us to find an abuse of discretion.

In sum, the ALJ's determination of prevailing market rates for attorneys was supported by the multiple prior fee awards and was consistent with the rates cited in the Altman Weil Survey for attorneys in the region with the same amount of experience.[12] Therefore, we conclude that the ALJ did not abuse his discretion in determining the prevailing market rates to be applied to the services of claimant's counsel, and that the BRB did not err in affirming that award on appeal.

We further hold that the BRB did not abuse its discretion in its calculation of reasonable hourly rates for claimant's counsel in the second fee petition. The BRB, like the ALJ, found that Wolfe's reasonable hourly rate was $300 per hour. And the BRB took a prudent approach by rejecting Gilligan's request for $225 per hour as unsupported by the evidence, while acknowledging that in a future case he might be able to establish a market rate greater than the $175 per hour he received in prior fee awards. Accordingly, we discern no abuse

---

[12] We held in Cox that the evidence submitted was insufficient to establish a prevailing market rate, and did not hold, as Eastern suggests, that reliance on the Altman Weil Survey was per se improper. See 602 F.3d at 288-91. While the generality of the Altman Weil Survey renders it of limited value in establishing a prevailing market rate, nevertheless, the ALJ and the BRB did not abuse their discretion by considering the Survey in the present case along with the other evidence submitted by claimant's counsel.

of discretion with respect to the hourly rates for counsel determined by the BRB.

We further conclude, however, that the agency adjudicators abused their discretion by determining a prevailing market rate of $100 per hour for the services rendered by the legal assistants employed in this case. While claimant's counsel provided evidence of the legal assistants' training, education, and experience, counsel did not submit any evidence to support a prevailing market rate for the work of those legal assistants. Nor did the information about the twenty-one fee awards provided by claimant's counsel address the hourly rates that were awarded to legal assistants in those prior cases. Notwithstanding this fact, however, Eastern submitted evidence on its own behalf of numerous prior fee awards in black lung cases in which legal assistants employed by claimant's counsel were awarded fees based on an hourly rate of $50.

Given the absence of evidence in the record to support a market rate of $100 on this record, we are left only with the evidence of an hourly rate of $50 provided by Eastern. Therefore, we reduce the hourly rate for the legal assistants from $100 to $50 per hour. In all other respects, we discern no

abuse of discretion in the hourly rates awarded by the ALJ or the BRB.[13]

## C.

Eastern also challenges the decisions of the ALJ and the BRB approving claimant's counsel's submission of hours billed in

---

[13] We also reject Eastern's argument that the ALJ and the BRB violated portions of the Administrative Procedure Act, 5 U.S.C. §§ 701 through 706, by relying on prior fee awards as evidence of a prevailing market rate, when the awards themselves were not in the record. It is commonplace for courts in various fee-shifting contexts to "take judicial notice of prior judgments and [] use them as prima facie evidence of the facts stated in them." See B & G Mining, 522 F.3d at 664 n.2 (quoting Mike's Train House, Inc. v. Lionel, LLC, 472 F.3d 398, 412 (6th Cir. 2006)); Patterson v. Balsamico, 440 F.3d 104, 124 (2d Cir. 2006) (directing district court to consider other evidence of a prevailing market rate as well as "taking judicial notice of rates awarded in prior cases," for 42 U.S.C. § 1988 fee petition). This practice does not violate the APA. B & G Mining, 522 F.3d at 664 n.2.

Moreover, there is no indication that the prior fee awards at issue in this case were not publicly available. And, in any event, claimant's counsel offered to provide copies of the prior awards upon request. Therefore, while the better practice would have been for claimant's counsel to have presented documentation of the prior fee awards, Eastern has not shown that it was prejudiced by the agency adjudicators' reliance on prior fee awards that were not made a part of the record.

Additionally, we disagree with Eastern's argument that the ALJ failed to comply with the duty of explanation under the APA, because the ALJ did not distinguish a few prior fee awards submitted by Eastern awarding lower hourly rates. See 5 U.S.C. § 557(c). The ALJ was not required to address specifically each contrary fee award, and, because we "can discern what the ALJ did and why he did it, the duty of explanation is satisfied." See Piney Mt. Coal Co. v. Mays, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (citation and internal quotation marks omitted).

27

quarter-hour increments. Eastern argues that the agency adjudicators erred by summarily approving the use of quarter-hour billing solely because 20 C.F.R. § 802.203(d)(3) permits such incremental billing. Eastern contends that, instead, the adjudicators were required to assess whether claimant's counsel properly had exercised "billing judgment," and to exclude "excessive, redundant, or otherwise unnecessary" hours. See Hensley, 461 U.S. at 434. Thus, Eastern urges us to hold that the agency adjudicators abused their discretion by awarding the requested hours in the absence of "proof that it took fifteen minutes to perform each and every task alleged." We decline Eastern's request, which would impose undue burdens not required by law.

We first observe, however, that we already have recognized that the practice of quarter-hour billing may lead to overbilling. See Broyles v. Dir., OWCP, 974 F.2d 508, 510-11 (4th Cir. 1992) (expressing concern with quarter-hour billing after identifying examples of tasks we concluded could not reasonably have taken fifteen minutes to accomplish); Yellowbook Inc. v. Brandeberry, 708 F.3d 837, 849 (6th Cir. 2013) ("the concern with quarter-hour increments is over-billing"). Nevertheless, the incidence of overbilling is not a concern unique to the use of quarter-hour billing increments. See B & G Mining, 522 F.3d at 666 (observing that "attorneys who bill in

28

tenth-hour increments might also overbill-the risk exists under both methods").

We further note that the regulations governing fee petitions before the BRB require that applicants submit bills in quarter-hour increments.[14]    20 C.F.R. § 802.203(d)(3) ("[a] fee application <u>shall</u> . . . contain[] all of the following specific information," including "[t]he number of hours, <u>in 1/4 hour increments</u>") (emphasis added).    Eastern does not cite any contrary authority, and we find none, prohibiting the use of quarter-hour billing in black lung cases.    Thus, to the extent that Eastern argues that the agency adjudicators abused their discretion per se by awarding fees in quarter-hour increments, this argument is without merit.    Moreover, we cannot agree that the ALJ and the BRB abused their discretion merely by considering a fee petition structured in accordance with applicable federal regulations.    <u>Cf.</u> <u>Thomas M. Cooley Law Sch.</u> <u>v. Am. Bar Ass'n</u>, 459 F.3d 705, 715 (6th Cir. 2006) (agency did not abuse its discretion by following existing regulations).

We next consider Eastern's argument that the fees awarded were excessive under the facts of this case.    At the outset, we observe that petitions for attorneys' fees should not result "in

---

[14] While 20 C.F.R. § 802.203(d) on its face only applies to the BRB, we perceive no reason, and the parties provide none, why the ALJ's analysis should have followed a different course.

a second major litigation," Hensley, 461 U.S. at 437, and that tribunals determining fee awards under fee-shifting statutes have a strong, appropriate concern "in avoiding burdensome satellite litigation" over fee awards, City of Burlington v. Dague, 505 U.S. 557, 566 (1992).

Any fee approved under the BLBA, however, must be "reasonably commensurate with the necessary work done." 20 C.F.R. § 725.366(b); 20 C.F.R. § 802.203(e). The use of quarter-hour billing does not relieve agency adjudicators of their obligation under the lodestar method to ensure that "excessive, redundant, or otherwise unnecessary" fees are not awarded. Hensley, 461 U.S. at 434.

We review for abuse of discretion the issue whether the number of hours allowed was excessive. See B & G Mining, 522 F.3d at 666-67; Conoco, Inc. v. Dir., OWCP, 194 F.3d 684, 692 (5th Cir. 1999). We afford the ALJ and the BRB substantial deference in deciding whether hours represented in a fee petition are excessive. See Zeigler, 326 F.3d at 902 (affording "great deference" to the "views and conclusions of the ALJ" regarding challenges to a fee award). Manifestly, the agency adjudicators are better positioned than this Court to evaluate the "reasonableness of time spent by a lawyer on a particular task in the course of litigation." Id.; see also Holiday, 591 F.3d at 228 (stating that an ALJ "has a better understanding" of

an attorney's reasonable hourly rate, which is an "inherently factual matter"); Ballard v. Schweiker, 724 F.2d 1094, 1098 (4th Cir. 1984) (under prior black lung fee award statutory scheme, recognizing that the district court "is in the better position to evaluate the quality and value of the attorney's efforts"). In view of this deferential standard, we generally will not disturb an agency adjudicator's decision concerning any given subset of charges when the adjudicator found that the total number of hours submitted was reasonable in relation to the work performed, and the adjudicator's decision is supported by the record. See B & G Mining, 522 F.3d at 666; Conoco, 194 F.3d at 692.

Eastern's argument that the present fee awards were excessive lacks merit because, essentially, it is grounded on Eastern's blanket objection that "there was no proof that it took fifteen minutes to perform each and every task alleged." Such a requirement improperly would escalate a fee applicant's present burden to show that the rate claimed and the hours worked were reasonable. See Hensley, 461 U.S. at 433-34; Holiday, 591 F.3d at 227. Moreover, the imposition of a greater proof burden requiring such exactitude would create a strong disincentive for attorneys to participate in black lung cases, thereby thwarting the intent of Congress that such claimants receive representation in seeking an award of benefits. See

31

<u>Perdue</u>, 130 S. Ct. at 1672; <u>Blum</u>, 465 U.S. at 893-94 (reasonable attorneys' fees "attract competent counsel," but do not "produce windfalls").

Here, the ALJ and the BRB conducted thorough reviews and reached conclusions well supported by the record that the total number of hours claimed was reasonable. The ALJ reasonably found that the fees were not facially excessive, in view of the length of the proceedings and the extensive discussion required in the ALJ's decision on the merits of the case. In addition, we think that the record also shows the complexity of the merits of the claim for benefits, regarding, among other things, the unusual diagnosis of "unilateral" pneumoconiosis. Moreover, the ALJ considered Eastern's objections to "each challenged itemized time charge to determine whether or not the charge is reasonable and compensable."

In conducting this review, the ALJ eliminated over forty charges by Wolfe, Gilligan, and certain legal assistants that were not compensable because the tasks at issue were clerical in nature. Moreover, the ALJ disallowed a significant number of charges on the basis that they were duplicative or unnecessary, including seven hours billed by Gilligan related to a deposition and a hearing when his co-counsel Wolfe also had charged for the same services. In all, as noted above, the ALJ subtracted about thirty hours from the request submitted by claimant's counsel.

32

Based on these considerations, we hold that the ALJ's award was manifestly the result of careful and thoughtful consideration of the fee petition and of Eastern's "extensive" objections.[15]

Like the ALJ, the BRB considered each challenged charge on an individual basis. The BRB disallowed several charges on various grounds, and Eastern does not take issue here with the BRB's specific findings in its review of the fee petitions.

When particular time entries "bear facial indicia of exaggeration," the party opposing a fee award should have the opportunity to challenge the petitioner about the hours claimed. Ballard, 724 F.2d at 1097. However, when the challenging party, such as Eastern here, lodges only a blanket objection to tasks billed in fifteen-minute increments, that party is not entitled to an individualized showing that "each and every task alleged" took the precise amount of time noted.

Accordingly, we discern no abuse of discretion by the ALJ or the BRB with respect to their consideration of the billing practices and the fee awards sought. The total number of hours awarded was reasonable and well supported by the record.

---

[15] We further observe that numerous charges to which Eastern had objected because they were presented in quarter-hour increments ultimately were disallowed in their entirety on other grounds.

33

III.

In conclusion, we find no indication here that the ALJ or the BRB simply rubber-stamped the challenged fee petitions. Notwithstanding our modification of the hourly rate awarded for the services of the legal assistants, we hold that the ALJ and the BRB consistently tailored their conclusions to the facts and circumstances presented both with respect to the hourly rates and to the number of hours awarded. We reduce the award of legal assistant fees from a combined $3,800 to $1,900, upon applying the $50 hourly rate to the 36.75 hours of legal assistant time for which the ALJ awarded fees, and the 1.25 hours for which the BRB awarded fees. For the reasons detailed above, we affirm, as modified herein, the fee awards entered by the ALJ and the BRB in this case.

AFFIRMED AS MODIFIED